

**Not Reported in F.Supp.2d** Page 1
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Richard D. KERN, Plaintiff,
v.
Frank J. CLARK, III, G. Michael Drmacich, and
Barry A. Zavah, Defendants.
**No. 01-CV-450S.**

April 9, 2004.

Michael Kuzma, Buffalo, NY, for Plaintiff.

Kristin Klein Wheaton, Assistant County Attorney, George Michael Zimmermann, Erie County Department of Law, Buffalo, NY, for Defendants.

DECISION & ORDER

SKRETNY, J.

I. INTRODUCTION

**\*1** In this case, Plaintiff Richard D. Kern alleges that Defendants, the District Attorney of Erie County and two of his assistants, have attempted to deter him from participating in activities protected by the First Amendment. Specifically, Plaintiff contends that Defendants have engaged in a series of bad faith prosecutions to harass and punish him. Currently before this Court is Defendants' Motion to Dismiss based upon the abstention doctrine outlined in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

II. BACKGROUND
A. Facts

Plaintiff is a journalist and political activist who resides in Buffalo, New York. (Transcript of Evidentiary Hearing, at p. 168). [FN1] He is concerned about many local issues, including housing problems, civil rights, and political corruption. (T. at 168-72). During the past twelve years, Plaintiff has written articles for small community newspapers, attended public meetings, distributed fliers, contacted public officials, published an internet website, and participated in various other activities that he describes as "civil disobedience." (T. at 169, 171, 189-92).

FN1. References to the evidentiary hearing transcript will be abbreviated as (T. at __).

Defendant Frank J. Clark, III has been the District Attorney of Erie County for the past seven years. (T. at 233). Defendant G. Michael Drmacich is an Assistant Erie County District Attorney. (T. at 22). Defendant Barry A. Zavah is currently retired, but was recently employed as an Assistant Erie County District Attorney. (T. at 110).

During the past several years, Plaintiff has been prosecuted by the Erie County District Attorney's Office on various criminal charges. (T. 33-34). Some of the charges were based upon complaints lodged by local public officials. (T. at 34-37, 173-77). Many of the charges were ultimately dismissed by judges of the Buffalo City Court for facial insufficiency. (T. at 59, 88, 187, 210). On other occasions, the charges were resolved when Plaintiff pled guilty or accepted an adjournment in contemplation of dismissal ("ACD"). (T. at 93-94, 204-205, 212-14, 216). Defendants Drmacich and Zavah have prosecuted many of the cases against Plaintiff on behalf of the District Attorney's Office. (T. at 30, 117, 184, 242).

Charles Flynn has been a commissioner of the Buffalo Municipal Housing Authority since 1999. (T. at 147). In addition, he has served as chairperson of the Erie County Independence Party and as a residency inspector for the City of Buffalo. (T. at 148-50). In the late spring or early summer of 2001, Flynn contacted the Buffalo Police Department and complained that he was being harassed by Plaintiff. (T. at 151-52).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

Thereafter, Flynn attempted to file charges against Plaintiff in Buffalo City Court, but was advised that he could not file any charges until he had consulted with Defendant Drmacich. (T. at 153). Flynn then met with Drmacich to discuss his complaints regarding Plaintiff. (T. at 152). At that meeting, Flynn provided Drmacich with audiotape recordings and papers documenting the alleged harassment. (T. at 153).

 *2 On June 6, 2001, three accusatory instruments (Criminal Informations) were filed in Buffalo City Court charging Plaintiff with harassment in the second degree, aggravated harassment in the second degree, and stalking in the fourth degree ("the Flynn charges"). (Plaintiff's Exhibits C, D, & E). These charges were based upon Flynn's allegations that Plaintiff left harassing messages on his answering machine, sent him numerous faxes, and confronted him in public on several occasions. *Id.* According to Flynn, Plaintiff called him a "liar," "a disgrace to the community," and questioned his integrity. *Id.* In addition, the Informations charged that Plaintiff screamed at Flynn and told him that he would be "watching." *Id.*

 On September 7, 2001, the Honorable Margaret J. Murphy, Buffalo City Court Judge, rendered a bench decision dismissing the Flynn charges as facially insufficient. [FN2] (Defendant's Exhibit A). The District Attorney's Office appealed that decision to the Honorable Michael J. Pietruszka, Erie County Court Judge. *Id.*

> FN2. However, a judgment was not entered on Judge Murphy's decision until May 20, 2002.

 On July 7, 2003, Judge Pietruszka filed a Memorandum and Order reversing Judge Murphy in part and reinstating the two harassment charges against Plaintiff. *Id.* Those charges are currently pending in Buffalo City Court. (T. at 9-10).

 B. Procedural History

 Plaintiff commenced this action on June 25, 2001, by filing a Complaint in the United States District Court for the Western District of New York. He seeks an injunction pursuant to 42 U.S.C. § 1983 barring Defendants from further prosecution of the Flynn charges. Plaintiff argues that the prosecution violates his First Amendment right to free speech.

 On July 16, 2001, Defendants filed a Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. In that motion, Defendants argued *inter alia* that this case should be dismissed based upon the *Younger* abstention doctrine. [FN3]

> FN3. On March 25, 2002, this Court filed a Decision and Order granting Defendant's Motion to Dismiss and denying Plaintiff's Motion for a Preliminary Injunction. The Clerk of the Court entered a judgment in favor of Defendants on March 26, 2002. Thereafter, Plaintiff filed an appeal with the United States Court of Appeals for the Second Circuit. On June 2, 2003, the Second Circuit issued a decision vacating the judgment and remanding the case to this Court. *Kern v. Clark,* 331 F.3d 9 (2d Cir.2003). On remand, the Second Circuit directed this Court "to conduct an evidentiary hearing on the issue of whether the 'bad faith' exception to the rule of *Younger* abstention applies" in this particular case. *Id.* at 13. As noted *supra,* upon remand this Court referred the case to Judge Scott for the purpose of conducting an evidentiary hearing in compliance with the Second Circuit's mandate.

 On August 12, 2003, this Court filed an Order referring this case to the Honorable Hugh B. Scott, United States Magistrate Judge. This Court directed Judge Scott to conduct an evidentiary hearing on the issue of whether the "bad faith" exception to the *Younger* doctrine applies in this particular case. The evidentiary hearing was held before Judge Scott on October 17, 24, and November 5, 2003.

 On December 18, 2003, Judge Scott filed a Report and Recommendation, in which he recommended that Defendants' Motion to Dismiss be granted. Plaintiff filed Objections to Judge Scott's Report and Recommendation on January 7, 2004.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 3
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

On February 25, 2004, this Court deemed oral argument unnecessary and reserved decision with respect to Defendants' Motion to Dismiss and Plaintiff's Objections.

### III. DISCUSSION
A. Legal Standard

Under the *Younger* abstention doctrine, federal courts are typically required "to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) (citing *Younger,* 401 U.S. at 43-44). The *Younger* doctrine is based upon "the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.' " *Diamond,* 282 F.3d at 198 (quoting *Cullen v. Fliegner,* 18 F.3d 96, 103 (2d Cir.1994)). Accordingly, principles of federalism, comity, and mutual respect require federal courts to abstain from interfering in ongoing state court proceedings. *Schlagler v. Phillips,* 166 F.3d 439, 442 (2d Cir.1999).

**\*3** Abstention under *Younger* is generally required when the following three conditions are met: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond,* 282 F.3d at 198.

There are, however, certain cases in which the federal court may set aside the *Younger* doctrine and intervene in an ongoing state proceeding. Federal intervention is appropriate when there has been "a showing of 'bad faith, harassment or any other unusual circumstances that would call for equitable relief.' " *Diamond,* 282 F.3d at 198 (quoting *Younger,* 401 U.S. at 54). For example, in a case involving an ongoing criminal prosecution in state court, federal intervention may be warranted if the prosecution "is brought in bad faith or is only one of a series of repeated prosecutions." *Younger,* 401 U.S. at 49.

B. Analysis

In the present case, there is no dispute that the initial three-part *Younger* test has been satisfied. Thus, the question presented is whether this Court should intervene in the ongoing state court proceeding based upon one of the exceptions to *Younger*.

A plaintiff seeking "to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies." *Diamond,* 282 F.3d at 198. Plaintiff argues that federal intervention is warranted in this particular case because the following three exceptions apply: (1) Defendants are prosecuting him in bad faith, (2) this prosecution is only one in a series of repeated prosecutions, and (3) extraordinary circumstances render the state courts incapable of fairly and fully adjudicating Plaintiff's federal claims. [FN4] This Court will address each exception in turn.

> FN4. In his papers, Plaintiff asserts that this Court must accept the allegations contained in his Complaint as true for purposes of the instant motion. This is incorrect. It is well-settled that a plaintiff seeking to avoid abstention under *Younger* must introduce evidence sufficient to establish that one of the exceptions applies. *Kirschner v. Klemons,* 225 F.3d 227, 236 (2d Cir.2000).

1. Bad Faith Exception

Federal intervention in state court proceedings may be warranted "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction...." *Diamond,* 282 F.3d at 198 (quoting *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971)). For example, intervention is justified where a "proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." *Cullen,* 18 F.3d at 103-104.

In the present case, the Second Circuit has noted that Plaintiff could invoke the bad faith exception by demonstrating that Defendants "aggressively prosecuted him in a string of weak cases brought on behalf of [his]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 4
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

political enemies." *Kern v. Clark,* 331 F.3d 9, 12 (2d Cir.2003). For the reasons set forth below, this Court finds that Plaintiff has failed to make such a showing.

 a. Harassment or Retaliation

 In cases addressing the bad faith exception, the Second Circuit has "emphasized that the subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Diamond,* 282 F.3d at 199 (collecting cases). In other words, the plaintiff must "show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Id.*

 **\*4** In the instant case, Plaintiff has failed to show that Defendants' actions were animated by a desire to harass, punish, or prevent him from engaging in his political activities. All three defendants testified that they never prosecuted Plaintiff based upon a desire to harass, oppress, or retaliate against him. (T. at 101, 141, 262). Critically, the undisputed evidence demonstrated that Defendants never independently initiated criminal charges against Plaintiff. Rather, each case was commenced when an individual citizen either obtained a summons from the Buffalo Police Department, filed a warrant card in Buffalo City Court, or lodged a complaint with the District Attorney's Office. On those occasions when the District Attorney's Office elected to pursue the charges, Defendant Drmacich first reviewed the accusatory instruments and determined that they were legally sufficient. (T. 92). Drmacich testified that he would not have prosecuted the cases if he felt that they were not sufficient under prevailing law. (T. at 92). Indeed, a screening system was eventually established that allowed the District Attorney's Office to review complaints lodged against Plaintiff before they were formally filed in the Buffalo City Court warrant clerk's office. (T. at 51, 119). On several occasions, Drmacich reviewed the complaints and refused to pursue charges against Plaintiff. (T. at 96-97).

 In addition, there is no evidence that Defendants acted at the behest of Plaintiff's political enemies or prosecuted Plaintiff because of his political activities or views. Drmacich testified that he never discussed politics or political issues during his meetings with the individuals who filed charges against Plaintiff. (T. 87-92). With respect to the prosecution of the Flynn charges, this testimony was corroborated by Mr. Flynn, who stated that he never discussed politics during his meeting with Drmacich. (T. at 156-57). Defendant Clark testified that he makes no distinction between cases involving private citizen complainants and those in which the complainant is a public official. (T. at 258). Further, Clark testified that he knows nothing about Plaintiff's political views. (T. at 240-41, 261). As noted *supra,* all three defendants stated that the prosecution of Plaintiff was not motivated by a desire to punish him for his politics or to deter him from further protest activities. (T. at 101, 141, 262).

 b. Reasonable Expectation of Obtaining a Favorable Outcome

 The Second Circuit has held that "for a federal plaintiff to invoke the bad faith exception, 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome .' " *Diamond,* 282 F.3d at 199 (quoting *Cullen,* 18 F.3d at 103). In the instant case, this Court finds that Defendants *did* have a reasonable expectation of obtaining favorable outcomes when they decided to pursue charges against Plaintiff.

 In particular, Defendants currently have a reasonable expectation of obtaining a favorable outcome with respect to the prosecution of the Flynn charges - the prosecution at the center of the instant litigation. Before deciding to prosecute those charges, Defendant Drmacich met with Flynn, who provided audiotape recordings and papers documenting the alleged harassment. (T. at 153). As such, when Drmacich decided to pursue charges against Plaintiff, he was acting not merely upon Flynn's allegations, but also upon physical evidence supporting those allegations. Moreover, at least one other court has reviewed the accusatory instruments and determined that the facts alleged, if proven, would support convictions for second degree harassment and aggravated harassment. In his decision of July 7, 2003, Judge Pietruszka concluded that "[i]t can be reasonably ... inferred from the alleged evidentiary facts, with regard to both accusatory instruments that [Plaintiff] intended to harass, annoy, threaten or alarm [Flynn]." (Defendant's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

Page 5

Exhibit A, p. 6).

**\*5** In addition, two of the cases prosecuted against Plaintiff proceeded to trial, with Plaintiff ultimately accepting an ACD. (T. at 93-94, 127, 213-14). Although an adjournment in contemplation of dismissal is not equivalent to a conviction under New York law, it is also not considered to be a determination in favor of the accused. *Smith-Hunter v. Harvey,* 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750, 753-54 (N.Y.2000). This result strongly indicates that Defendants prosecuted those cases with a reasonable expectation of obtaining a favorable outcome.

Lastly, Plaintiff, the party bearing the burden of proof, failed to introduce detailed evidence concerning the underlying facts and ultimate dispositions in many of the cases prosecuted by Defendants. As such, this Court cannot adequately evaluate the merits of those cases to determine whether Defendants had a reasonable expectation of achieving a favorable outcome. Plaintiff simply offered the bald assertion that those cases were based upon "heavily perjured complaints." (T. at 171). While it appears that some of the cases were dismissed as facially insufficient, this is not necessarily dispositive. Defendants Zavah and Clark testified that the dismissal of charges on that basis is a common occurrence in Buffalo City Court. (T. at 133, 259-60). Plaintiff did not introduce any evidence tending to show that his cases were dismissed at a higher rate than other cases involving similar charges.

c. Personal *Animus* or Bias

Generally, the bad faith exception has been applied in cases that involved a history of personal conflict, in which the prosecution was motivated by personal *animus* or bias. For example, the Second Circuit affirmed the application of the bad faith exception in a case where the defendants had a "past history of personal conflict" with the plaintiff and "their corresponding desire 'to do something about' him rose to the 'level of animus.' " *Cullen,* 18 F.3d at 104.

The Second Circuit has held that the bad faith exception should *not* be applied in cases where there is no evidence to suggest that the state court proceeding was motivated by bias or pursued on a "strictly *ad hominem*" basis. *See Diamond,* 282 F.3d at 200-201; *see also Schlagler,* 166 F.3d at 442-44 (holding that because plaintiff "failed to show that the actions of [defendant] constituted anything other than a straightforward enforcement of the laws of New York, his case does not fall within the bad faith exception as set forth in *Cullen*" ).

In the present case, this Court finds that there has been no showing of bias or personal *animus* on the part of Defendants. Defendant Clark testified that he has never met Plaintiff and has no knowledge or opinion whatever regarding Plaintiff's political views. (T. at 240-41, 261). While Defendant Drmacich stated that he was familiar with Plaintiff's views, he actually agrees with Plaintiff on a number of issues. (T. at 86, 266). Drmacich even approached Plaintiff at a local restaurant on one occasion. (T. at 265). He explained that he had no personal animosity toward Plaintiff and proposed a meeting designed to foster a better relationship between the District Attorney's Office and Plaintiff. (T. at 265-66). Although Defendant Zavah stated that he was aware of Plaintiff's status as a "community activist," there is no evidence to suggest that Zavah harbored any bias against Plaintiff as a result. (T. at 117). Indeed, Zavah prosecuted two criminal cases on behalf of Plaintiff, *i.e.* cases in which Plaintiff was the victim and principal complainant. (T. at 136-37). In one of those prosecutions, Zavah successfully obtained a conviction of an individual on charges of harassing Plaintiff. (T. at 137).

**\*6** Plaintiff offers two arguments in support of his contention that Defendants were motivated by bias. The first argument relates to the destruction of a file maintained by Defendant Drmacich. [FN5] Plaintiff contends that the destruction of this file is evidence of Defendants' bad faith and *animus.* This Court finds that argument unavailing. The mere fact that Drmacich maintained a file regarding Plaintiff is not indicative of bias. Zavah testified that such files were routinely maintained with respect to defendants involved in multiple prosecutions. (T. at 144). Further, there is no evidence that Drmacich's decision to destroy the file was motivated by *animus* against Plaintiff. Drmacich destroyed the file, along with other unrelated files, as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 6
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

part of a routine office cleaning that occurred before this litigation began. (Drmacich Affidavit, Docket No. 36). Plaintiff offered no evidence to contradict this account. Moreover, there is no suggestion that the file contained any unique materials, *i.e.* documents that are not otherwise available to Plaintiff. Furthermore, although Drmacich twice testified during the evidentiary hearing, Plaintiff did not ask him any questions about the existence of the file, its contents, or its destruction. Rather, Plaintiff simply offers the conclusory allegation that the destruction of the file is indicative of bias. This is insufficient to overcome the application of the *Younger* doctrine. See *Kirschner v. Klemons,* 225 F.3d 227, 236 (2d Cir.2000) ("Mere conclusory allegations of bias are insufficient to overcome *Younger*--a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception.").

>FN5. During his testimony, Zavah stated that Drmacich maintained a file concerning Plaintiff. (T. at 128). According to Zavah, the file contained copies of the criminal informations and other materials related to the various cases involving Plaintiff. (T. at 144). At the conclusion of the evidentiary hearing. Plaintiff demanded production of the Drmacich file. (T. at 227). Thereafter, Drmacich filed an affidavit stating the he had destroyed the file while cleaning his office prior to the commencement of this litigation. (Affidavit of G. Michael Drmacich, Docket No. 36, at ¶¶ 6-7). Drmacich further stated that the file was not an official file of the District Attorney's Office, but rather was part of his personal materials. *Id.* at ¶¶ 3-4.

Second, Plaintiff contends that Defendants' bad faith is evidenced by the fact that his cases have received "unusual treatment." In this regard, he notes that (i) Zavah and Drmacich communicated with Clark regarding Plaintiff's cases, (ii) Michael McHale, the Assistant District Attorney currently prosecuting the Flynn charges, usually handles felony-level cases only, and (iii) "someone" in the District Attorney's Office elected to appeal Judge Murphy's decision dismissing the Flynn charges.

This Court finds Plaintiff's arguments unpersuasive. There is no dispute that Zavah and Drmacich discussed Plaintiff's cases with Clark on certain occasions. However, Drmacich testified that he routinely provided Clark with updates concerning "high profile" cases, *i.e.* cases that received media attention. (T. at 21, 29). Plaintiff's cases were frequently covered by the local news media. (T. at 32-33, 199, 218, 220-21). As such, the discussions with Clark do not suggest bias - they simply indicate that Defendants considered Plaintiff's cases to be "high profile." This can hardly be considered prejudicial to Plaintiff, who testified that he welcomes the media coverage of his cases. (T. at 218).

With respect to Mr. McHale, there is no dispute that he has been assigned to the prosecution of the Flynn cases. McHale testified that he is a "Litigation Assistant," who typically handles felony-level cases only. The prosecution of the Flynn charges involves only misdemeanor offenses. However, McHale testified that it was "not at all" unusual for a Litigation Assistant to be assigned to a high profile case, even when it involved the prosecution of misdemeanor charges in Buffalo City Court. (T. at 165-66). Plaintiff did not offer any evidence to contradict this testimony.

*7 Lastly, it is undisputed that someone in the District Attorney's Office elected to appeal Judge Murphy's decision dismissing the Flynn charges. However, Plaintiff failed to introduce any evidence tending to show that Defendants were even involved in the decision to file that appeal. Moreover, even assuming *arguendo* that Defendants did file the appeal, there is nothing to suggest that the decision was motivated by anything other than the belief that Judge Murphy had erred. Indeed, the fact that a portion of Judge Murphy's ruling was ultimately reversed demonstrates that this would have been a reasonable conclusion to reach.

2. Series of Repeated Prosecutions

In *Younger,* the Supreme Court held that federal intervention would be warranted where a state court criminal prosecution is "brought in bad faith or is only one of a series of *repeated* prosecutions." *Kern,* 331 F.3d at 12 (emphasis in original) (quoting *Younger,* 401 U.S. at 49).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 7
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

This Court addressed the "bad faith" exception to *Younger supra* in Section III.B.1. However, the Second Circuit has suggested that an additional exception may be available. Specifically, the appeals court stated that federal intervention might be warranted "in a case involving a series of good-faith repeated prosecutions." *Kern,* 331 F.3d at 12. Although the Second Circuit noted that such an exception to *Younger might* exist, it has not definitively ruled on that question. *Id.*

For purposes of the instant decision, this Court will assume that a "series of repeated prosecutions" exception exists as an independent exception to the *Younger* doctrine. As such, this Court will now consider whether such an exception should be applied in this case.

In *Kern,* the Second Circuit provided an example of a situation in which a "series of repeated prosecutions" exception might apply. The court stated that "[a]n example might be repeated state-court prosecutions wherein, for procedural reasons, a defendant was unable to raise defects of a Constitutional nature." *Kern,* 331 F.3d at 12 n. 2. Clearly, the present case does not fit within the example identified by the Second Circuit. There is no evidence to suggest that Plaintiff has been unable to raise defects of a Constitutional nature during the state court proceedings.

Further, this Court finds that the language used in *Younger* suggests that this exception is not applicable to the present case. In *Younger,* the Supreme Court held that federal intervention might be warranted in a case involving a *"series* of *repeated* prosecutions." 401 U.S. at 49 (emphasis added). The use of the qualifying adjectives "series" and "repeated" suggests that the Supreme Court sought to carve out a narrow exception applicable to a small number of unusual cases. In other words, the Court was not endorsing federal intervention in all cases involving multiple prosecutions of the same individual. Such a rule would be inconsistent with the Court's admonition that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is *not* to issue such injunctions." *Id.* at 45 (emphasis added). The *Younger* exceptions are intended to apply only in cases presenting *"unusual* circumstance[s]...." *Id.* at 54 (emphasis added).

*8 The present case clearly involves multiple prosecutions of the same individual - Plaintiff has been prosecuted by the Erie County District Attorney's Office several times over the past few years. Thus, the question becomes whether those prosecutions are related to a degree sufficient to be considered a "series of repeated prosecutions" under *Younger.* In other words, the issue is whether the prosecutions are unusual in that they have an atypical combination of common elements.

For the reasons set forth below, this Court finds that the prosecutions are not sufficiently related to override the strong policy favoring abstention. As noted above, the prosecutions occurred over a period spanning approximately eight years. (T. at 186). The various cases were initiated by at least eight different individuals and a municipal authority. (T. 34-35, 117, 173-87, 201- 205, 212). Some of the complainants were public officials, while others were not. (T. 175-78, 181-83, 201-202). With respect to one of the charges, the Buffalo Police Department issued a summons and arrested Plaintiff (T. 205-06). Other charges were initiated when the complainant filed a warrant card in the Buffalo City Court warrant clerk's office. (267-68). Still others were filed only after the complainants consulted with the District Attorney's Office. (T. at 51, 96-97, 119). While some of the charges were dismissed, others resulted in convictions and ACDs. (T. at 59, 88, 93-94, 187, 204-205, 210-16). Some of the charges involved allegations of harassment, while others concerned criminal trespassing and stalking. (T. at 59, 88, 93-94, Plaintiff's Exhibits B, C,D, E, F).

This Court is mindful that these prosecutions are, in a sense, related. [FN6] Obviously, all of the cases involved Plaintiff and at least one of the defendants. (T. at 204-205, Plaintiff's Exhibits B, C, D, E, F). Some of the complainants were family members or co-workers of other complainants. (T. 175-77). In addition, all of the cases appear to involve behavior that Plaintiff considers to a form of political activism--conduct that he described as "civil disobedience" and "vigilantism." (T. at 203, 220-21).

> FN6. However, this Court's review is again hampered by the fact that Plaintiff, who bears

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 8
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

the burden of proof, failed to introduce evidence detailing the specifics of many of the cases.

However, as noted above, the question is not simply whether the prosecutions are related. Rather, the issue is whether they have an unusual combination of common elements such that they can be considered a "series of repeated prosecutions" under *Younger.* Here, the common elements are not unique. By definition, every case involving multiple prosecutions involves prosecutions of the same subject. Further, it is not uncommon for one or two assistant district attorneys to repeatedly handle the same types of cases or cases involving the same defendant. Finally, Plaintiff testified about the *modus operandi* that he employs to advance his political views. (T. 189-97). Thus, the fact that each of these prosecutions involves allegations of similar conduct is rendered less significant by virtue of the fact that Plaintiff frequently engages in such conduct.

*9 In sum, even if there is a "series of repeated prosecutions" exception to *Younger,* this Court finds that application of that exception to the present case would not be warranted.

3. Extraordinary Circumstances

As noted above, although abstention is strongly favored under *Younger,* federal intervention may be warranted "upon a showing of 'bad faith, harassment, or any *other unusual circumstances* that would call for equitable relief." *Diamond,* 282 F.3d at 198 (emphasis added) (quoting *Younger,* 401 U.S. at 54). This Court having already addressed the issues of bad faith and harassment, the only remaining exception is the "unusual" or "extraordinary" circumstances exception.

That exception has been described as follows:
  Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation. *Kugler v. Helfant,* 421 U.S. 117, 124-25, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).

The Supreme Court has twice provided examples of circumstances that qualify as extraordinary for purposes of this exception. First, federal intervention is warranted in cases where the state statute to be applied in the criminal proceeding is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger,* 401 U.S. at 53-54. Second, the extraordinary circumstances exception has been applied in cases where the state administrative agency "was incompetent by reason of bias to adjudicate the issues pending before it." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). For the sake of convenience, this Court will refer to these two examples as the "Supreme Court examples."

This Court finds that neither of the Supreme Court examples applies to the facts of the present case. There is no argument that New York's harassment law is unconstitutional. [FN7] In addition, there has been no showing of bias on the part of the Buffalo City Court. [FN8] As discussed *supra,* Plaintiff has also failed to establish that Defendants harbored any bias or animosity toward him.

>     FN7. Although Plaintiff contends that the statute cannot be constitutionally applied to his conduct, he does not allege that the statute is itself unconstitutional.
>
>     FN8. On February 18, 2004, Plaintiff's counsel filed an affidavit alleging that the Honorable E. Jeannette Ogden (the judge presiding over the prosecution of the Flynn charges) had an improper *ex parte* communication with Magistrate Judge Scott (Docket No. 50). Attached to counsel's

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)  
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

Page 9

affidavit was a transcript of proceedings held before Judge Ogden on December 15, 2003. The transcript indicates that there was telephone communication between Judge Scott and Judge Ogden. However, that communication appears to have been initiated by Judge Scott and did not involve a discussion of the merits of either the instant case or the state court case. In any event, Plaintiff does not allege that Judge Ogden has been biased as a result of the phone call. Rather, counsel simply notes that the conversation was "potentially prejudicial." Notably, Plaintiff's counsel did not raise this issue before Judge Scott or in the memorandum of law filed in support of his Objections to Judge Scott's Report and Recommendation.

As such, this Court finds itself in a situation similar to that addressed by the Second Circuit in *Diamond.* In that case, the Second Circuit found that neither of the Supreme Court examples applied to the facts presented. *Diamond,* 282 F.3d at 201. The appeals court then considered whether the facts nevertheless fit within the definition of "extraordinary circumstances." In that regard, the Second Circuit analyzed whether there was (a) "a state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation" *and* (b) whether there was evidence that "the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Diamond,* 282 F.3d at 201 (citation omitted). To invoke the extraordinary circumstances exception, a plaintiff must introduce evidence sufficient to establish both of these elements. *Id*

**\*10** In the instant case, there is no evidence to suggest that the New York courts cannot afford Plaintiff an adequate remedy. Plaintiff argues that the Flynn charges are an attempt to criminalize his First Amendment activity. There is no evidence to suggest that he cannot raise that argument in the state court proceeding. (Indeed, it appears that he already has). Because Plaintiff has the ability to seek judicial review of his constitutional claims in the state courts, this Court must "assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* at 202 (quoting *Pennzoil v. Texaco,* 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). As outlined above, this Court finds that Plaintiff has failed to introduce any unambiguous evidence or authority to the contrary.

IV. CONCLUSION

The *Younger* abstention doctrine embodies "bedrock principles of federalism." *Diamond,* 282 F.3d at 193. It is based upon "the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.' " *Id.* (citation omitted). As such, federal intervention in an ongoing state proceeding is an extraordinary remedy that is only justified in a narrow class of cases. *Id.* The party seeking to obtain that remedy bears the burden of establishing that intervention is warranted. *Id.*

In that regard, it is important to note that the issue currently before this Court is *not* whether Plaintiff is guilty of the conduct alleged in the Flynn charges. Further, the issue before this Court is not whether the prosecution of the Flynn charges infringes upon Plaintiff's right to free speech. Rather, the question presented by Defendants' motion is whether Plaintiff's constitutional claim should be decided by a federal court or a state court. As noted above, because of the ongoing state proceeding, there is a strong presumption that Plaintiff's claim should be decided in the state court. Plaintiff bears the burden of establishing that the state court does not provide an adequate forum for resolution of his claim and vindication of his rights.

For the reasons outlined above, this Court finds that Plaintiff has not met his burden. Plaintiff failed to establish that Defendants' prosecution of the Flynn charges is motivated by bad faith, harassment, or any other improper motive. Rather, the evidence demonstrates that the prosecution of the Flynn charges involves nothing more than a "straightforward enforcement of the laws of New York...." *Schlagler,* 166 F.3d at 443. In addition, Plaintiff has not proven that this prosecution is simply one in "a series of repeated prosecutions," as that phrase is defined for purposes of *Younger* abstention. Finally, Plaintiff failed to establish that this case presents an unusual or

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)  
**(Cite as: 2004 WL 941418 (W.D.N.Y.))**

Page 10

extraordinary set of circumstances justifying federal intervention. As such, this Court finds that the ongoing state court proceeding provides Plaintiff with an adequate forum for the vindication of his First Amendment rights. Therefore, abstention is mandatory under the *Younger* doctrine. Defendants' Motion to Dismiss is granted.

V. ORDERS

**\*11** IT HEREBY IS ORDERED that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

FURTHER, that this Court accepts the recommendation set forth in Judge Scott's Report and Recommendation (Docket 45) for the reasons outlined in the instant Decision and Order.

FURTHER, that Plaintiff's Objections to Judge Scott's Report and Recommendation (Docket No. 46) are denied.

FURTHER, that the Clerk of the Court shall take the steps necessary to close this case.

SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 941418 (W.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34767078 (Trial Motion, Memorandum and Affidavit) Attorney's Affidavit in Reply to Plaintiff's Reply in Opposition to Defendants' Motion to Dismiss the Complaint (Sep. 20, 2001)

• 2001 WL 34767079 (Trial Motion, Memorandum and Affidavit) Affidavit of Richard D. Kern (Sep. 20, 2001)

• 2001 WL 34767081 (Trial Motion, Memorandum and Affidavit) Affidavit of G. Michael Drmacich in Opposition to Plaintiff's Motion for a Preliminary Injunction (Aug. 30, 2001)

• 2001 WL 34767080 (Trial Motion, Memorandum and Affidavit) Affidavit of Barry Zavah in Opposition to Plaintiff's Motion for a Preliminary Injunction (Aug. 01, 2001)

• 2001 WL 34767082 (Trial Motion, Memorandum and Affidavit) Supporting Affidavit (Jul. 16, 2001)

• 2001 WL 34767083 (Trial Motion, Memorandum and Affidavit) Affidavit of Richard D. Kern (Jul. 13, 2001)

• 2001 WL 34767084 (Trial Motion, Memorandum and Affidavit) Motion for Preliminary Injunction (Jun. 26, 2001)

• 2001 WL 34767085 (Trial Pleading) Complaint for Temporary and Permanent Injunction (Jun. 25, 2001)

• 1:01cv00450 (Docket)  
(Jun. 25, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.