**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMES W. McCULLEY,

                      Plaintiff,

v.

N.Y.S. DEPARTMENT OF ENVIRONMENTAL CONSERVATION; DENISE M. SHEEHAN, Acting N.Y.S. Commissioner of Environmental Conservation for the State of New York; ERIN CROTTY, N.Y.S. Commissioner of Environmental Conservation for the State of New York; STUART BUCHANAN. N.Y.S. Department of Environmental Conservation Region 5 Regional Director; THOMAS MARTIN, N.Y.S. Department of Environmental Conservation Regional Forester; REGION 5 OF THE N.Y.S. DEPARTMENT OF ENVIRONMENTAL CONSERVATION; CHRISTOPHER LaCOMBE, N.Y.S. Department of Environmental Conservation Regional Attorney; JOSEPH LaPIERRE, N.Y.S. Department of Environmental Conservation Forest Ranger; and JOHN DOES 1-10, N.Y.S. Department of Environmental Conservation Officers/Employees,

                      Defendants.

No. 05-CV-811
(LEK/DRH)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SMITH, DWYER & BLISS, P.C.<br>Attorney for Plaintiff<br>2296 Saranac Avenue<br>Lake Placid, New York 12946 | MATTHEW D. NORFOLK, ESQ. |
| HON. ELIOT SPITZER<br>Attorney General for the<br>   State of New York<br>Attorney for Defendants<br>Department of Law<br>The Capitol<br>Albany, New York 12224-0341 | DAVID A. MUNRO, ESQ.<br>Assistant Attorney General<br>Environmental Protection Bureau |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**

Plaintiff James W. McCulley ("McCulley") commenced this action against the New York State Department of Environmental Conservation (DEC), Region 5 of that department, six named DEC employees, and ten "John Doe" DEC employees. McCulley alleges that defendants violated his rights under the United States and New York constitutions and seeks compensatory and punitive damages as well as injunctive relief under 42 U.S.C. § 1983 and New York law. Compl. (Docket No. 1). Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on abstention grounds. Docket No. 11. In an order filed November 10, 2005, the district court referred the case to the undersigned for an evidentiary hearing "addressing bad faith and other exceptions to abstention" and for a report and recommendation thereon in accordance with 28 U.S.C. § 636(b)(1)(B). Docket No. 21 at 2. An evidentiary hearing was held on February 2 and 3, 2006. For the reasons which follow, it is recommended that defendants' motion to dismiss be granted.

**I. Background**

The facts related herein constitute the Court's findings on all controverted issues of material fact.

This case arises in the context of the ongoing conflicts over the use of forests and wilderness in the Adirondack Mountains of New York. The Adirondack Park Agency (APA) was created within the executive branch of New York State government to oversee the conservation, protection, development, and use of the lands within its boundaries. N.Y.

2

Exec. Law §§ 801, 803 (McKinney 2005). Under the direction of the APA, DEC is charged with the responsibility for, inter alia, protecting and managing the forests and wilderness in the Adirondacks. N.Y. Envtl. Conserv. Law §§ 1-0101, 3-0101 (McKinney 2005). McCulley, a resident of Lake Placid in Essex County, is a snowmobile enthusiast and since at least 2000, the President of the Lake Placid Snowmobile Club. In that capacity he has been an outspoken advocate to and against DEC for the designation of additional trails for use by snowmobilers in the Adirondacks, particularly for trails which connect with other previously designated trails to allow snowmobilers more varied and wider-ranging trails.

The interests of snowmobilers, and of other motorized transports such as all-terrain vehicles, frequently conflict with those of individuals who enjoy cross-country skiing, snowshoeing, and other forms of non-motorized travel over snow. These enthusiasts object not only to the noise caused by motorized transports but also to the alleged degradation of trails and threats to the safety of others on the trails caused by motorized transports. Thus, snowmobilers and cross-country skiers find themselves frequently in competition for the use and designation of trails in the Adirondacks, and it frequently falls to DEC to manage and resolve these conflicts.

**A. The Road**

The conflict which gives rise to this case concerns one such trail. That trail was originally part of what later came to be known as the Old Mountain Road and which originally extended from Northwest Bay at Westport, New York on Lake Champlain west across Essex and Franklin Counties to St. Lawrence County. At different times, that road has also been known as Old Military Road, the Northwest Bay Road, and the Jackrabbit

3

Trail. The portion at issue in this case runs from a point .9 miles west of Route 73 in the Town of Keene approximately 3.5 miles west to Alstead Hill Road in the Town of North Elba in the direction of Lake Placid and all within Essex County [hereinafter the "Road"].

The Road has always been a one-lane dirt road running between its two end-points through forest and wilderness. By 1972, the motor traffic on the Road had dwindled and the Road had come to be used almost exclusively by hikers in the warmer months and by snowmobilers, cross-country skiers and snowshoers in the winter months. See Defs. Ex.[1] 7 (APA State Land Master Plan - 1972) at 29; see also Defs. Ex. 8 (APA State Land Master Plan - 1979) at 46. Beaver ponds caused water and marshes to cover the Road in spots. By 1987, however, the Road had been closed to motorized vehicles, including snowmobiles.[2] See Defs. Ex. 9 (APA State Land Master Plan - 1987) at 51 ("The . . . Road has been closed and the area now fully conforms to wilderness standards.").[3] DEC posted signs along the Road that snowmobiles and other motorized vehicles were prohibited from use on the Road.

By this time, the Road had become devoted in winter months to cross-country skiers

---

[1] "Pl. Ex." and "Defs. Ex." followed by a number refer to the exhibits received in evidence during the evidentiary hearing.

[2] Isolated instances of motorized vehicles on the Road occurred after 1987 but appear to have occurred less than once per year and generally with DEC or Town authorization.

[3] The term "wilderness" includes within its definition "an area of state land or water having primeval character, without significant improvement or permanent human habitation, which is protected and managed so as to preserve, enhance and restore, where necessary its natural conditions . . . ." Defs. Ex. 11 (APA State Land Master Plan - 2001) at 20. Snowmobiles and other motorized vehicles and equipment are prohibited in areas designated as "wilderness." Id. at 23-24.

4

and snowshoers and increasingly became referred to as the Jackrabbit Trail. Maintenance of the Road for these purposes had primarily been assumed by the Adirondack Ski Touring Council (ASTC), a state-wide organization dedicated to improving and maintaining cross-Country ski trails and to promoting the interests of cross-country skiing. Tr. 210-11.[4] This primarily involved work done by ASTC volunteers removing boulders, trees, and brush from the Road in the summer months and grooming the Road for skiers in the winter months. The ASTC performed the work at first through temporary permits granted by DEC and, since 2002, pursuant to an Adopt a Natural Resource Agreement which allowed the ASTC access to the Road for maintenance for a five-year period. In some years the ASTC was assisted for periods of one or two days by employees of DEC or, until 1996, of the Towns of Keene and North Elba. The ASTC views snowmobiles as inconsistent with use of the Road as a cross-country ski trail.

### B. McCulley v. DEC

Beginning in 2000, McCulley began searching for new snowmobile trails in the Lake Placid-area. McCulley determined from DEC that the Road was now deemed part of the wilderness and, therefore, snowmobiles were prohibited on the Road. Directly to DEC and in the media, McCulley advocated the designation of additional snowmobile trails in the area and, in particular, the Road. McCulley's advocacy became increasingly strident and his relations with DEC representatives occasionally contentious.

Through DEC's responses to requests he made for documents under the New York

---

[4]"Tr." followed by a number refers to the page of the transcript of the evidentiary hearing on February 2 and 3, 2006.

5

Freedom of Information Law (FOIL) and through other research, McCulley concluded that the Road was a town road traversing the Towns of Keene and North Elba and, therefore, DEC had no authority to regulate its use to prohibit snowmobiles. McCulley presented this view to DEC, but DEC adhered to its position that the Road had been abandoned by the towns and no longer existed as a right-of-way through the wilderness area.

McCulley determined to bring a legal challenge to DEC's jurisdiction over the Road. He received legal advice, however, that he lacked standing to do so until he had been charged with violating a pertinent DEC regulation. Accordingly, on March 20, 2003, McCulley drove to the Road in the Town of North Elba, unloaded his snowmobile, and drove the snowmobile over the Road into the Town of Keene and back. McCulley then telephoned a DEC Forest Ranger, reported what he had done, and asked that he be issued a ticket for violating DEC regulations. The next day, DEC served McCulley with an Environment Conservation Appearance Ticket (ECAT) charging the use of a snowmobile on State land in a forest preserve in the Town of Keene in violation of N.Y. Comp. Codes R. & Regs. tit.6, § 196.2 (2005). However, DEC then determined that the ticket had been issued improperly because no ranger had personally observed the violation and withdrew the ticket on March 22, 2003.

In May 2003, an article appeared in a local newspaper reporting that nothing had come of McCulley's threats to drive a snowmobile on the Road to precipitate a legal challenge to DEC's claim to jurisdiction over the Road. McCulley responded with a letter to the editor stating that "I rode my snowmobile on the . . . Road . . . ." Pl. Ex. 44 at 1.[5] On

---

[5]In his verified complaint, McCulley testified that the event occurred on March 20, 2003. Compl. at ¶ 33. In his letter to the editor, McCulley asserted that it occurred on

June 21, 2003, DEC issued a new summons charging McCulley with the same violation of § 196.2 on March 20, 2003. Pl. Ex. 48. The trial on that charge took place on July 20, 2003 in Keene Town Court. During a four hour trial, McCulley, who represented himself, contended that the Road remained a town road and was not State land as DEC charged. DEC[6] contended that the Road had been abandoned by use and had become State land. McCulley was found guilty and was sentenced to pay a fine of $50.

     McCulley, now represented by counsel, appealed his conviction to the Essex County Court contending that the town court erred in finding that the Road was State land. In an opinion dated March 23, 2005, the County Court reversed McCulley's conviction, holding that the Road had been created by statute as a town road, had not been abandoned, and thus was not State land. People v. McCulley, No. 4528, 2005 WL 756582 (N.Y. Co. Ct. Mar. 23, 2005) (Halloran, J.); see also Compl. at Ex. B. DEC sought permission from the New York Attorney General to appeal this ruling to the New York Court of Appeals, but the Attorney General denied such permission on the ground that reversal of the decision on legal grounds was unlikely because, in addition to holding that the Road was not State land as a matter of law, the County Court determined to reverse McCulley's conviction on the facts and in the interests of justice. See id. at *13. The decision received substantial coverage in the Lake Placid-area media and through McCulley. See, e.g., Pl. Ex. 70.

---

March 24, 2003. Pl. Ex. 44 at 1. At the hearing, McCulley testified that the date was March 23, 2003. Tr. at 103-04. Although not a material issue, the Court finds that the date of the event was March 20, 2003.

     [6]The prosecution was conducted by defendant Christopher LaCombe, DEC Regional Counsel, who requested and received permission from the Essex County District Attorney to do so on behalf of the District Attorney.

Although no appeal was taken, DEC declined to accept the Essex County Court decision as authoritative, continued to oversee use of the Road as State land, and awaited further opportunities to litigate the issue.[7] Believing that he had established that the Road was a town road, McCulley contended that the Road was open to motorized vehicles, including snowmobiles. On May 21, 2005, defendant Joseph LaPierre, a DEC Forest Ranger, left a telephone message with McCulley, who then returned his call. LaPierre inquired if McCulley had any information about a report that a backhoe was recently observed on the Road. Interpreting LaPierre's inquiry as a challenge, McCulley told LaPierre that he would be driving his pickup truck on the Road the next morning at 10:00 a.m.

The next morning, LaPierre went to the Road and posted new DEC signs declaring the Road off-limits to motorized vehicles. See Defs. Ex. 3. McCulley arrived as scheduled, drove his truck along the Road from North Elba over the boundary line into Keene and back as LaPierre took photographs. See Defs. Ex. 6. LaPierre then issued McCulley an ECAT for operating a motor vehicle in the Town of North Elba in a forest preserve in violation of N.Y. Comp. Codes R. & Regs. tit. 6, § 196.1. LaCombe again sought and received authorization from the Essex County District Attorney to prosecute the case. DEC concluded that a proceeding in town court, even if successful, would again result in an

---

[7]According to a senior DEC attorney, DEC views the dispute with McCulley over the Road and the decision of the Essex County Court in People v. McCulley as significant for DEC's management of State lands in forest preserves. According to DEC, those lands and preserves include hundreds of miles of old town roads which, like the Road, DEC believes have been abandoned and therefore become State land. Thus, DEC believes that if the People v. McCulley precedent prevails, its ability to protect and preserve wilderness areas of the State will be impaired. Tr. at 421.

8

appeal to the same Essex County Court judge who had issued the decision in McCulley's earlier case. At the return date of the ticket on or about June 10, 2005, LaCombe dismissed the ECAT and caused McCulley to be served with a summons for an administrative proceeding commenced by DEC alleging the same conduct by McCulley on May 22, 2005 in violation of N.Y. Comp. Codes R. & Regs. tit. 6, § 196.1 and similar provisions of the N.Y. Envtl. Conserv. Law. Pl. Ex. 98. DEC seeks a civil penalty of up to $500. Id. at 4. According to DEC, the administrative proceeding will allow DEC to take advantage of a lower standard of proof and make a more complete record to establish that the Road is State land. McCulley commenced this action on June 29, 2005, defendants moved to dismiss on abstention grounds, and the DEC administrative proceeding was stayed pending decision on that motion.

## II. Discussion

Defendants have moved to dismiss on the ground that the federal courts should abstain from entertaining this action in deference to the pending DEC administrative proceeding against McCulley. The doctrine of abstention articulated by the Supreme Court in Younger v. Harris, 401 U.S. 37, 43-45 (1971), rests on "interrelated principles of comity and federalism." Spargo v. New York State Comm'n on Judical Conduct, 351 F.3d 65, 74 (2d Cir. 2003). Thus, the doctrine assumes that "a state proceeding provides an adequate forum for the vindication of federal constitutional rights." Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994). "Younger generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002).

9

The doctrine applies to state administrative proceedings. See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627 (1986).

Younger abstention requires a party to demonstrate three conditions. First, there is a pending state court proceeding. Second, an important state interest is implicated in that proceeding. Third, there will be an adequate opportunity for the plaintiff to obtain judicial review in the state proceeding of his or her federal constitutional claims. Kern v. Clark, 331 F.3d 9, 10 (2d Cir. 2003); Diamond "D", 282 F.3d at 198 (citing Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001)). There appears no dispute here that defendants have met these three requirements. However, McCulley nevertheless contends that abstention should be denied because this case satisfies the exceptions identified in Younger of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 54. A federal plaintiff bears the burden of demonstrating that an exception applies. "Diamond "D", 282 F.3d at 198. Thus, on the district court's referral, the issue presented is whether McCulley has established that either exception[8] bars Younger abstention here. See Docket No. 21. An appellate court reviews de novo a district court's application of the abstention doctrine. See Schlagler v. Phillips, 166 F.3d 439, 441 (2d Cir. 1999).

---

[8] In Diamond "D", the Second Circuit referred to the two Younger exceptions of bad faith and extraordinary circumstances. 282 F.3d at 198, 201. However, at least one court in this circuit has found a third Younger exception for a series of repeated prosecutions. See Kern v. Clark, No. 01-CV-4508, 2004 WL 941418, at *7-9 (W.D.N.Y. Apr. 9, 2004). To the extent applicable here, this factor is considered as part of the bad faith exception and not as a separate Younger exception.

10

**A. Bad Faith**

In a companion case to Younger, the Supreme Court explained that while the elements for abstention may be satisfied, a federal court should nevertheless deny abstention "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction. . . ." Perez v. Ledesma, 401 U.S. 82, 85 (1971). The Second Circuit has held that this exception may be found to apply in the narrow circumstances where the federal defendants have no reasonable expectation of success in the state proceeding and where "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Diamond "D", 282 F.3d at 199 (citing Schlagler, 166 F.3d at 442-44). Thus, "[a] state proceeding that is legitimate in its purposes, but unconstitutional in its execution – even when the violations of constitutional rights are egregious – will not warrant the application of the bad faith exception." Id.

**1. Likelihood of Success in State Proceeding**

The viability of defendants' administrative prosecution of McCulley rests on their contention that the Road was abandoned by the towns to the State no later than 1987 and thus had become wilderness within the jurisdiction of DEC at the time of McCulley's alleged 2005 violation. McCulley challenges this contention, asserting that at the time of his alleged violation, the Road was not wilderness under DEC's jurisdiction because the Road was created by statute, it could be abandoned to wilderness only according to statutorily prescribed procedures which had not then occurred here, and DEC thus had no jurisdiction

11

over the Road at the time of his alleged violation.

It appears for several reasons that there exists no reasonable likelihood that DEC will ultimately prevail in the state proceeding. First, DEC's contention that the Road was abandoned by use to its jurisdiction lacks merit. Under New York law, roads may be created by use or by statute. Compare N.Y. High. Law § 189 (McKinney 2001) (roads created by use), with N.Y. High. Law § 171 (McKinney 2001) (roads created by statute). In either case, a road once created comes within the jurisdiction of the town in which it is found. N.Y. High. Law §§ 171, 189. A road created by use may be abandoned by disuse pursuant to certain procedures, most notably a vote in favor of abandonment by a majority of the town board of the town where the road is located and the filing of a certification of that vote. N.Y. High. Law § 205(1) (McKinney 2001). N.Y. High. Law § 212 appears to provide another procedure for the abandonment of roads created by statute requiring a determination and certification of abandonment by the state agency having jurisdiction or control over the land, generally DEC or the Department of Transportation.

There is no dispute that no such procedural requirements for abandonment were met here prior to McCulley's alleged violation. Defendants contend that these procedural requirements were merely ministerial acts unnecessary to accomplish abandonment where the required disuse of the Road had already occurred. It is arguable that the issuance or filing of the required certifications may be deemed ministerial or clerical and therefore unnecessary to complete an abandonment. However, the formal determination of abandonment by a town or state agency constitutes the essential determination of abandonment required by the statute. The absence of any such determination here prior to McCulley's alleged violation appears to leave the Road within the jurisdiction of the Towns

12

of Keene and North Elba on the date in question and thereby defeat defendants' assertion in the state proceeding that DEC had jurisdiction to cite McCulley for the alleged violation.

Second, this conclusion is supported by the decision in People v. McCulley, 2005 WL 756582; see also People v. Paul Smith's Elec. Light & Power & R.R. Co., Findings of Fact at ¶¶ 43, 45 & Decision at 3 (Essex Co. Sup. Ct. dec. July 29, 1953) (same). Defendants have offered no coherent contrary legal theory, stating only that their position will be presented in the state proceeding. Thus, the decision in People v. McCulley remains at least persuasive authority that DEC lacked jurisdiction over the Road at the time of McCulley's alleged violation.

For these reasons, McCulley has established that defendants lack a reasonable likelihood of success in the pending state administrative proceeding.

### B. Defendants' Subjective Motivation

As the Second Circuit has explicitly held, "the subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." Diamond "D", 282 F.3d at 199 (citing Schlagler, 166 F.3d at 442-43). Two decisions discussed by the Second Circuit in Diamond "D" illustrate the centrality of the subjective motivation inquiry to the determination of bad faith. In Cullen, a teacher opposing the re-election of two school board members contended that the school district selectively enforced against him a statutory prohibition on electioneering within 100 feet of a polling place. The school district moved to dismiss the action on Younger abstention grounds in light of a pending disciplinary action against the plaintiff. The district court denied the school district's motion and enjoined the disciplinary proceeding, finding that the school

13

district "had a 'past history of personal conflict' with Cullen, and their corresponding desire 'to do something about' him rose to the 'level of animus.'" Cullen, 18 F.3d at 104; see also Diamond "D", 282 F.3d at 189.  The Second Circuit affirmed, holding that the bad faith exception applied where the state proceeding had been commenced "in a 'strictly ad hominem' manner." Cullen, 18 F.3d at 104.

In Schlagler, the plaintiff had been charged with aggravated harassment under a New York statute which had been found unconstitutional by an intermediate state appellate court.  The plaintiff commenced a federal action alleging that the prosecution abridged his First Amendment rights, defendants moved to dismiss on Younger abstention grounds, and the district court granted the motion, finding that while no animus toward the plaintiff had been demonstrated, "the statute was facially unconstitutional, and therefore, any prosecution under it could only be in bad faith." Diamond "D", 282 F.3d at 199 (citing Schlagler, 166 F.3d at 443-44.  The Second Circuit reversed, holding that "because the prosecution was not retaliatory or otherwise illegitimate in its motivation, and, in fact, was nothing more 'than a straightforward enforcement of the laws of New York, [the] case does not fall within the bad faith exception as set forth in Cullen." Id.

Thus, the Second Circuit concluded in Diamond "D" that these cases illustrate the centrality to the bad faith exception of a showing of "subjective bad faith" or "malevolent intent." Diamond "D", 282 F.3d at 199-200.  Absent a determination of this element, Younger abstention should apply and principles of comity mandate deference by a federal court to state court proceedings in the first instance to address and resolve the federal constitutional claims asserted by the plaintiff.  Id.  In the absence of subjective bad faith, a federal court may address federal constitutional claims only after the state courts have had

14

the opportunity to do so. Id. Therefore, even when, as here, a plaintiff has demonstrated that the state proceeding is fatally flawed, that plaintiff must also demonstrate that the federal defendants are pursuing the state proceeding principally because of a personal animus or a malevolent intent toward the plaintiff rather than a desire to enforce state law.

Here, McCulley contends that in addition to DEC's groundless claim of jurisdiction over the Road, such subjective bad faith has been demonstrated by the pattern of contacts between he and DEC officials since 2002. These include the hostile attitude of DEC officials in refusing to accede to McCulley's requests to designate the Road for snowmobiles, McCulley's FOIL requests for DEC documents, the enforcement proceedings brought against him by DEC, and a conversation between McCulley and a DEC ranger concerning measurements and photographs taken by McCulley and others on an Adirondack trail during a summer hike.[9] It also includes an incident in May 2004 following a public meeting at which McCulley ridiculed the DEC Commissioner in his statement at the meeting. Following the meeting, McCulley encountered DEC representatives at a local restaurant. One of those representatives confronted McCulley and using profanities, hollered at McCulley that DEC would never agree to McCulley's requests.

With one exception, these incidents bespeak at worst a concern by DEC for enforcement of what it believes are valid DEC restrictions on use of the Road rather than a

---

[9]McCulley testified at the hearing that in this conversation, LaPierre threatened to arrest him. Tr. 151. LaPierre testified that he likely told McCulley that it constituted a violation to conduct scientific research in the Adirondacks without a permit but that he never threatened to arrest McCulley. Tr. 318-19. McCulley was never arrested for this matter. In light of all the circumstances and having observed the testimony of the two witnesses, it appears most likely that McCulley interpreted LaPierre's statement as a threat but that LaPierre never threatened to arrest McCulley on this occasion. Accordingly, LaPierre's testimony concerning this event rather than McCulley's is credited.

15

personal animus toward McCulley. Since 2002, McCulley and DEC have found themselves at odds over whether motorized vehicles should be permitted on the Road and, later, whether the Road remains a town road not subject to DEC regulations. McCulley acknowledges that his conduct has moved from seeking to persuade DEC in the early years to designate the Road for snowmobiles to seeking to compel such use. Tr. 87. McCulley's efforts were passionate, strident, conveyed in person and through all available media, and occasionally ad hominem.[10] They also included efforts to bring the issue of jurisdiction over the Road to a head in court by alerting DEC that he had or would be driving a motorized vehicle on the Road both on March 20, 2003 and on May 22, 2005. McCulley's provocative actions must be considered in assessing defendants' motivation in bringing the pending state proceeding.

For their part, defendants appear generally to have responded to McCulley with appropriate professionalism. McCulley's FOIL requests were answered, he was received and his inquiries answered at DEC offices, unplanned encounters in the community between McCulley and defendants were courteous and unremarkable, and the hearing in this Court produced no evidence of a personal animus toward McCulley by any defendant beyond disagreement with McCulley over use of the Road. The one exception occurred in May 2004 following the public meeting at which McCulley ridiculed the DEC Commissioner. Following the public meeting, McCulley encountered various DEC employees, none named as a defendant herein, at a local restaurant. One DEC employee angrily confronted

---

[10]For example, in May 2004, speaking at a public meeting attended by DEC representatives, McCulley referred to the DEC Commissioner as having received "the number one loon award." Tr. 140.

16

McCulley and, freely using profanity, told McCulley that he would never receive State approval for a snowmobile trail in Lake Placid. Tr. 141-46. However, this conversation did not involve any defendant in this case and no defendant was present at the time. Moreover, at worst, the DEC employee threatened that McCulley would not receive approval of his requests from the State, not that the State would take affirmative action against McCulley. This isolated incident falls short of demonstrating personal animus against McCulley.

Finally, there is the matter of DEC's multiple proceedings against McCulley. The first two resulted from McCulley's determination to challenge in court DEC's claimed jurisdiction over the Road. After advising DEC that he had driven a snowmobile on the Road on March 20, 2003, DEC issued a ticket to McCulley for the offense. That first charge was dismissed by DEC after DEC determined that no DEC employee had actually witnessed McCulley's conduct. However, after McCulley stated in a letter to a newspaper that he had driven a snowmobile on the Road, DEC re-charged him on June 21, 2003 for the March 20 incident. McCulley's conviction on that charge was reversed on March 23, 2005. As the result of driving a vehicle on the Road on May 22, 2005, McCulley was issued another ticket by DEC. On June 10, 2005, that ticket was dismissed by DEC in favor of the presently pending administrative charge against McCulley.

There is no indication in the record that any of these four proceedings were instituted by any defendant in retaliation against McCulley for his advocacy or his anti-DEC positions. There is also no indication that these charges resulted from any personal animus by any defendant toward McCulley. Rather, defendants' conduct in these proceedings are consistent with "the straightforward enforcement of the laws of New York." Diamond "D",

17

282 F.3d at 199 (quoting Schlagler, 166 F.3d at 443-44). Moreover, these proceedings were invited by McCulley as a method of resolving his dispute with DEC over the Road. The fact that defendants accepted his invitations and have zealously sought to prevail in those proceedings does not evidence the malevolent intent required to demonstrate subjective bad faith.

Accordingly, McCulley has failed to demonstrate that defendants acted with subjective bad faith in commencing the pending administrative proceeding against him. McCulley has thus failed to establish the applicability here of the bad faith exception to Younger abstention.

### B. Extraordinary Circumstances

The second Younger exception requires a plaintiff to demonstrate that "'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it . . . ." Kugler v. Helfant, 421 U.S. 117, 124-25 (1975); Diamond "D", 282 F.3d at 201 (describing the requirements for this exception as a "high standard"). To invoke this exception, a plaintiff must demonstrate "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." Diamond "D", 282 F.3d at 201 (citing Trainor v. Hernandez, 431 U.S. 434, 441-42 (1977)).

Here, there is no evidence that the administrative proceeding is so biased against McCulley as to be incompetent to resolve fairly the federal constitutional claims raised by McCulley. See Gibson v. Berryhill, 411 U.S. 564, 577 (1973); Diamond "D", 282 F.3d at

201. Moreover, even if DEC's administrative proceeding does prove incompetent to address McCulley's federal constitutional claims, McCulley could seek further review independent of DEC through an Article 78 proceeding through the New York court system challenging the DEC administrative proceeding. See N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp. 2005). Thus, McCulley has failed to demonstrate that the pending and available state court proceedings are "incapable of fairly and fully adjudicating the federal issues before it." Kugler, 421 U.S. at 124.

Accordingly, McCulley has also failed to establish the applicability of the second Younger exception.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the exceptions to abstention be found inapplicable to this case and that defendants' motion to dismiss on grounds of abstention be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: April 25, 2006
         Albany, New York

_David R. Homer_
United States Magistrate Judge