UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMES W. MCCULLEY,

                                                                        **Verified Answer**

                                        Plaintiff,

                                                                        **05-CV-00811**

                - against -
N.Y.S. DEPARTMENT OF ENVIRONMENTAL                                      **(LEK/DRH)**
CONSERVATION   et. al.

_____

                                        Defendants.

_____

        Defendants, by their counsel, ANDREW M. CUOMO, Attorney General of the State of

New York, as and for their answer to the complaint (following the complaint's subheadings) :

                **ALLEGATIONS CONCERNING JURISDICTION AND PARTIES**

        1.      Deny the allegations in ¶ 1 of the complaint except admit that the complaint

alleges purported violations of plaintiff's constitutional and civil rights.

        2.      Deny having knowledge or information sufficient to form a belief as to the

allegations in ¶ 2 of the complaint.

        3.      Admit upon information and belief the allegations in ¶¶ 3 and 4 of the complaint.

        4.      Deny having knowledge or information sufficient to form a belief as to the

allegations in ¶ 5 of the complaint.

        5.      Admit the allegations in ¶ 6 of the complaint.

        6.      Deny the allegations in ¶¶ 7 and 8 of the complaint except admit that Erin Crotty

was formerly Commissioner of Environmental Conservation and Denise M. Sheehan was

formerly Acting Commissioner and affirmatively state that she was later Commissioner of

Environmental Conservation and that Alexander B. Grannis is currently Commissioner..

7.      Deny the allegations in ¶ 9 of the complaint except admit that Stuart Buchanan was formerly DEC Regional Director for Region 5 and that the County of Essex is one of the counties in DEC Region V.

8.      Deny the allegations in ¶ 10 of the complaint except admit that Thomas D. Martin was formerly the Regional Forester for DEC Region 5 and that the County of Essex is one of the counties in DEC Region V.

9.      Admit the allegations in ¶ 11 of the complaint.

10.     Admit the allegations in ¶ 12 of the complaint except affirmatively states the County of Essex is only one of eight counties within DEC Region 5.

11.     Deny the allegations in ¶ 13 of the complaint except admit that Joseph LaPierre is a New York State Forest Ranger and affirmatively states that the County of Essex is one of the counties in DEC Region V.

12.     Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 14 of the complaint.

## FACTUAL ALLEGATIONS

13.     Deny having knowledge or information sufficient to form a belief as to the allegations in ¶¶ 15 and 16 of the complaint except admits that defendants DEC, Thomas Martin, former Commissioner Crotty believed that the portion of Old Mountain Road located on State owned Forest Preserve land had been abandoned and was no longer a public highway.

14.     Deny the allegations in ¶ 17 of the complaint except admit that each defendant believed that the portion of Old Mountain Road located on State owned Forest Preserve land had been abandoned and was no longer a public highway.

2

15. Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 18 of the complaint.

16. Deny the allegations in ¶ 19 of the complaint except refer to the November 1996 Thomas Wahl letter for its complete text, context, meaning, and legal effect.

17. Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 20 of the complaint.

18. Deny the allegations in ¶ 21 of the complaint except admit that members of the public use the Old Mountain Road in the summer and winter for non-motorized recreational use under the supervision of DEC.

19. Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 22 of the complaint except admit that members of the public lawfully use the Old Mountain Road for non-motorized recreational use such as hiking, snowshoeing and cross-country skiing and other members of the public may have unlawfully operated snowmobiles, all-terrain vehicles ("ATVs"), and other motor vehicles on the State-owned portion of the Old Mountain Road.

20. Deny the allegations in ¶¶ 23 and 24 of the complaint except admit that defendants allow the Adirondack Ski Touring Council ("ASTC") and its members to undertake non-motorized maintenance of the State-owned portion of the Old Mountain Road pursuant to adopt a Natural Resource Agreement with the Department, with assistance from the Town of Keene.

21. Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 25 of the complaint.

3

22. Admit the allegations in ¶ 26 of the complaint that inmates from the Moriah Shock Incarceration Facility helped rebuild a bridge and deny the remaining allegations in ¶ 26.

23. Deny the allegations in ¶ 27 of the complaint.

24. Deny the allegations in ¶ 28 of the complaint except admit that defendants allow ASTC volunteers to undertaking tree clearing and other non-motorized maintenance of the State-owned portion of the Old Mountain Road.

25. Deny the allegations in ¶ 29 of the complaint and affirmatively states that the Town of Keene has not undertaken any improvement of the Old Mountain Road for a period of more than six years commencing after October 1996.

26. Deny the allegations in ¶ 30 of the complaint.

27. Deny the allegations in ¶ 31 of the complaint.

28. Deny the allegations in ¶ 32 of the complaint except admit that DEC has not required ASTC to obtain a permit to perform maintenance on the State-owned portion of the Old Mountain Road and affirmatively states that the ASTC has entered into AANR agreement with DEC that governs its maintenance activities.

29. Admit upon information and belief the allegations in ¶¶ 33, 34, and 35 of the complaint.

30. Admit the allegations in ¶ 36 of the complaint except refer to the Informations issued by DEC for their complete text, context, meaning, and legal effect.

31. Admit the allegations in ¶¶ 37, 38, and 39 of the complaint.

4

32.     Deny the allegations in ¶ 40 of the complaint except admit that the Essex County Court (Halloran, J.) issued a decision reversing the conviction in the "interests of justice" and refer to the decision in People v. McCulley, 7 Misc.3d 1004(A), 2005 WL 75682, 2005 Slip Op. 50439 (U) (Essex Co. Ct., 2005) for its complete text, context, meaning, and legal effect.

33.     Deny the allegations in ¶ 41 of the complaint except refer to the People v. McCulley decision for its complete text, context, meaning, and legal effect, and affirmatively state that the Court's statements as to the status of the portion of the Old Mountain Road on State-owned Forest Preserve land are dicta.

34.     Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 42 of the complaint.

35.     Deny having knowledge or information sufficient to form a belief as to the allegations in ¶¶ 43 and 44 of the complaint except refer to the quoted expressions and opinions for their complete text, context, meaning, and legal effect, and admit that the expressions and opinions are protected by the First Amendment.

36.     Admit the allegations in ¶ 45 of the complaint.

37.     Deny the allegations in ¶ 46 of the complaint.

38.     Deny the allegations in ¶ 47 of the complaint.

39.     Admit the allegations in ¶ 48 of the complaint.

40.     Admit the allegations in ¶ 49 of the complaint that plaintiff was issued a citation by DEC Forest Ranger LaPierre, deny the remaining allegation in ¶ 49, and affirmatively state that the citation was issued on behalf of DEC, not on behalf of "all defendants."

5

41.     Admit the allegations in ¶ 50 of the complaint except refer to the June 13, 2005 letter by defendant Lacombe addressed to the Town Court of the Town of North Elba for its complete text, context, meaning, and legal effect.

42.     Admit the allegations in ¶¶ 51, 52, 53, and 54 of the complaint except refer to the DEC Notice of Hearing and Complaint for their complete text, context, meaning, and legal effect.

43.     Deny the allegations in ¶ 55 of the complaint.

44.     Deny the allegations in ¶ 56 of the complaint and affirmatively state that, in an Order issued May 19, 2009 following the enforcement hearing, a copy of which is attached hereto as Exhibit A, DEC Commissioner Grannis dismissed the administrative complaint filed against plaintiff.

## FIRST CAUSE OF ACTION
### (First Amendment Violation Restraining Plaintiff's Freedom of Speech)

45.     Replead to the allegations in ¶ 57 of the complaint as previously pled.

46.     Deny the allegations in ¶¶ 58, 59, 60, 61, 62, 63, 64, 65, 66, 67 and 68 of the complaint and affirmatively state that the request for injunctive relief sought in ¶ 68 to permanently stay the administrative enforcement hearing is now moot.

## SECOND CAUSE OF ACTION
### (Fourteenth Amendment -Denial of Substantive Due Process)

47.     Replead to the allegations in ¶ 69 of the complaint as previously pled.

48.     Deny the allegations in ¶¶ 70, 71, and 72 except refer to the People v. McCulley decision for its complete text, context, meaning, and legal effect.

49.     Deny the allegations in ¶¶ 73, 74, 75, 76, 77, and 78 and affirmatively state that the request for injunctive relief sought in ¶ 78 to permanently stay the administrative enforcement hearing is now moot.

## THIRD CAUSE OF ACTION
### (Fourteenth Amendment -Denial of Equal Protection Under the Law)

50.     Replead to the allegations in ¶ 79 of the complaint as previously pled.

51.     State that the allegations in ¶ 80 of the complaint constitute a conclusion of law to which no response is required, and to the extent a response is required, deny the allegations.

52.     Deny the allegations in ¶¶ 81, 82, 83, 84, 85, 86, 87, 88, 89 and affirmatively state that the allegations seeking to enjoin the holding of the administrative enforcement hearing are now moot.

## FOURTH CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1983)

53.     Replead to the allegations in ¶ 90 of the complaint as previously pled.

54.     Deny the allegations in ¶ 91 of the complaint and affirmatively state that DEC, as an agency of the State of New York, is not a "person" amenable to suit pursuant to 42 U.S.C. § 1983.

55.     Deny the allegations in ¶¶ 92, 93, 94 and 95 of the complaint.

## FIFTH CAUSE OF ACTION
### (Violation of the Constitution of the State of New York)

56.     Replead to the allegations in ¶ 96 of the complaint as previously pled.

57.     Denies the allegations in ¶ 97 of the complaint except refer to L. 1885, ch. 283, for its complete text, context, meaning, and legal effect.

7

58. Denies the allegations in ¶ 98 of the complaint except admit that L. 1885, ch. 283 was repealed and reenacted with identical provisions in L. 1895, ch. 395 and refer to L. 1885, ch. 283 and L. 1895, ch. 395 for their complete text, context, meaning, and legal effect.

59. Deny the allegations in ¶ 99 of the complaint except refer to L. 1895, ch. 395, State Constitution Article XIV, and People v. Baldwin, 197 A.D. 285 (3d Dep't 1921) for their complete text, context, meaning, and legal effect, and affirmatively state that the "free use" provisions of L. 1895, ch. 395 were repealed a series of legislative enactments between 1911 and 1916.

60. State that the allegations in ¶ 100 of the complaint constitute a conclusion of law to which no response is required, and to the extent a response is required, defendants deny the allegations.

61. Deny the allegations in ¶ 101 of the complaint.

62. Deny having knowledge or information sufficient to form a belief as to the allegations in ¶ 102 of the complaint.

63. Deny the allegations in ¶ 103 of the complaint.

64. Deny the allegations in ¶ 104 of the complaint except refer to the "free use" provisions in L. 1895, ch. 395, and the subsequent legislation which repealed the "free use" provisions for their complete text, context, meaning, and legal effect.

65. Deny the allegations in ¶ 105 of the complaint and affirmatively state that this Court should decline the exercise of its pendent jurisdiction to grant plaintiff's request for the declaratory relief sought in ¶ 105 because there is no legal basis for such a declaration.

8

66. Deny the allegations in ¶¶ 106, 107, 108, and 109 of the complaint and affirmatively state that this Court should decline the exercise of its pendent jurisdiction to grant plaintiff's request for the declaratory relief sought in these paragraphs because the requests have been rendered moot by the Commissioner's May 19, 2009 decision and order.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

67. Plaintiffs' allegations and causes of action against DEC and the individually named State defendants in their official capacities seeking compensatory and punitive damages are barred by the Eleventh Amendment to the U.S. Constitution.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

68. Plaintiffs' allegations and causes of action seeking compensatory and punitive damages against the individually named State defendants, named in their individual capacities, are barred under the doctrine of qualified immunity because each of the individually named State defendants acted in good faith compliance with all relevant constitutional and statutory law, within the scope of his or her respective duties, and committed no act infringing on or depriving plaintiff of any constitutional right that was clearly established at the time the alleged act or acts of the individually named State defendants took place.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

69. Plaintiff's allegations and causes of action which seek to restrain DEC and the individually named State defendants from proceeding with the administrative enforcement hearing are moot.

9

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

70.     Plaintiff's allegations and causes of action which seek declaratory relief against DEC and the individually named State defendants on the basis of violations of State law are barred by the Eleventh Amendment to the US Constitution.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

71.     Plaintiff's allegations and causes of action claiming that DEC and the individually named State defendants have retaliated or are retaliating against plaintiffs' exercise of their First Amendment rights by bringing enforcement actions against plaintiffs, must be dismissed for the following reasons: must be dismissed for failing to state a cause of action because plaintiff fails to show that defendants acted with retaliatory intent when it sought to enforce DEC's rules and regulations prohibiting motor vehicle use on Forest Preserve lands.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

72.     Plaintiff's allegations and causes of action brought pursuant to 42 U.S.C. § 1983 must be dismissed for failing to state a viable cause of action because the allegations and causes of action:

a.      fail to show that any of defendant has committed an act or has acted in a manner that has deprived plaintiffs of any of his Federal due process, equal protection or other constitutional rights; and

b.      fail to show any judicially cognizable monetary damages suffered on account of any purported infringement upon plaintiff's due process, equal protection or other Federal constitutional rights.

10

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

73.     Plaintiff's allegations and causes of action seeking punitive damages against DEC

and the individually named defendants above must be dismissed for failing to state a cause of

action since plaintiff fails to show that any of the defendants acted recklessly or egregiously with

respect to him.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

74.     Defendants have immunity from from suit.

WHEREFORE, defendants respectfully request that judgment be entered dismissing the

complaint as against each of them and for such other relief as to the Court may be just and

equitable, together with costs, disbursements and counsel fees.

Dated: Albany, New York
       October 30, 2009

ANDREW M. CUOMO
Attorney General of the State of New York
Counsel for Defendants

By:

LAWRENCE A. RAPPOPORT
Associate Attorney
Bar Roll No. 103965
The Capitol
Albany, New York 12224
Tel. No. (518) 474-1191
Email:
Lawrence.Rappoport@oag.state.ny.us

To. Matthew D. Norfolk, Esq.
    Bar Roll No. 5122249
    Briggs and Norfolk, LLP
    2296 Saranac Avenue
    Lake Placid, New York 12946
    Tel No. (518) 523- 5555

11

VERIFICATION

STATE OF NEW YORK       :
                        :ss.:
COUNTY OF ESSEX         :

The undersigned being sworn, under penalty of perjury, says: I am a Regional Attorney with the New York State Department of Environmental Conservation.. I have read the annexed Answer and know the contents thereof and the same to be true to my knowledge, except those matters therein which are started to be alleged on information and belief, and as to those matters I believe them to be true.

CHRISTOPHER A. LACOMBE

Sworn to before me this 30th
day of October, 2009

Notary Public

Kathy R. Scriver
Notary Public, State of New York
No. 01Sc6146364
Qualified in Franklin County
Commission Expires May 15, 20 /2

STATE OF NEW YORK
DEPARTMENT OF ENVIRONMENTAL CONSERVATION
625 BROADWAY
ALBANY, NEW YORK 12233-1010

In the Matter

– of –

the Alleged Violation of Article 9 of the
Environmental Conservation Law and
Part 196 of Title 6 of the Official
Compilation of Codes, Rules and Regulations of the State of New York,

– by –

**JAMES W. McCULLEY**,

Respondent.

DEC Case No. R5-20050613-505

**DECISION AND ORDER OF THE COMMISSIONER**

May 19, 2009

**DECISION AND ORDER OF THE COMMISSIONER**

Background

      Staff of the New York State Department of Environmental Conservation (DEC or Department) commenced this administrative enforcement proceeding by service of a notice of hearing and complaint dated June 10, 2005.  Staff alleges in the Complaint that respondent James W. McCulley violated section 196.1 of title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York (6 NYCRR) by operating a motor vehicle within the State forest preserve.

      Specifically, Department staff alleges that on May 22, 2005, Mr. McCulley drove his motor vehicle on a portion of a road located within the State forest preserve in the Town of North Elba.  One end of the road begins at State Route 73 and continues for approximately nine-tenths of a mile within the Town of North Elba before it crosses into the State forest preserve.  The first nine-tenths of a mile begins with a paved road and ends in a gravel road, at the end of which is a turnaround.  The portion of the road that runs through the State forest preserve is also unpaved. After the road runs through the Town of North Elba, it runs through the Town of Keene.  The portion of the road at issue here runs through the Town of North Elba.  The road has been known by various names, and for ease of reference, I will refer to it in this decision as Old Mountain Road.

      Mr. McCulley does not challenge that he drove his truck on Old Mountain Road in the Town of North Elba from Route 73, and at the turnaround, he backed his truck for a short distance further along the road, i.e., for about thirty feet onto the State forest preserve.  He contends, however, that the law did not prohibit him to do so.  He took this action to force a legal determination on the status of Old Mountain Road.

      This enforcement matter was assigned to Chief Administrative Law Judge (ALJ) James T. McClymonds, who presided over a three-day administrative hearing in Ray Brook, New York, on November 13-15, 2007.  During the hearing, eleven witnesses testified, and the Chief ALJ accepted over 100 exhibits into the hearing record.  Many of these exhibits were historical records, dating back decades, relating to prior ownership and use of Old Mountain Road.

      After the hearing, and pursuant to a schedule established by Judge McClymonds, the parties submitted closing briefs as well as briefs on respondent's motion to dismiss the complaint and for a directed verdict in respondent's favor.  The record in this matter closed on April 14, 2008, and Chief ALJ McClymonds issued a Hearing Report dated March 27, 2009.

**Commissioner's Ruling on Respondent's Motion to Dismiss**

      Based upon my review of the record and the applicable law, I adopt the attached hearing report as my decision in this matter, subject to the comments below.  I agree that Department

-1-

staff did not meet its burden in this matter.  Accordingly, I am granting Mr. McCulley's motion to dismiss the complaint.  This means that this enforcement proceeding against Mr. McCulley is dismissed.

**Rationale**

<u>Section 196.1</u>

In bringing this enforcement action, Department staff alleges that Mr. McCulley violated 6 NYCRR 196.1(a), which prohibits the operation of a motor vehicle within the State forest preserve.  Section 196.1(b), however, sets forth a number of exceptions to that general prohibition, two of which are relevant here.  The regulation expressly permits operation of a motor vehicle within the forest preserve (1) on a road under the jurisdiction of a town highway department or the New York State Department of Transportation or (2) "where a legal right-of-way exists for public or private use."  6 NYCRR 196.1(b)(1), (b)(5).  Thus, the Department's own regulations contemplate that town roads can exist within the forest preserve and that people may legally operate motor vehicles on them.  As demonstrated below, both of the relevant exceptions of section 196.1(b) are satisfied here.

<u>The road is within the forest preserve.</u>

As a preliminary matter, Mr. McCulley contends that State forest preserve land does not include any town roads that run through it.  In essence, he is arguing that while the State may own land around roads within the forest preserve, the State does not own the roads themselves, including the roadbed underlying the roads.  This position is not correct.  The record demonstrates that the State acquired title in fee simple to the lands of the forest preserve through which Old Mountain Road traverses.  That forest preserve land is subject to the use of town roads, or the right-of-way created by town roads, does not mean that the State does not acquire the land underlying the roadbed.  Thus the threshold jurisdictional question in section 196.1(a) of whether the forest preserve was even implicated here has been satisfied.

Moving beyond the forest preserve issue, the question next presented is whether Department staff demonstrated that Mr. McCulley's operation of a motor vehicle did not fall within one of the two relevant exceptions in section 196.1(b).  That is, Department staff had the burden of proving that Old Mountain Road is not under the jurisdiction of a town highway department or that a legal right-of-way does not exist on Old Mountain Road for public or private use.  Here, Department staff did not meet its burden on either issue.

<u>Old Mountain Road is a town road that has not been abandoned, and is accordingly under the jurisdiction of a town highway department.</u>

Regarding the first relevant exception in section 196.1, a town road remains a town road unless it is (1) affirmatively abandoned as a matter of law by a town under New York Highway

-2-

Law § 205; (2) it is abandoned through non-use under the common law; or (3) the State asserts jurisdiction pursuant to New York Highway Law § 212.

New York Highway Law § 205 provides that a town can affirmatively abandon a road in one of two ways. Under the first way, when a road has not been used for six years, the road is deemed abandoned when the town superintendent, based on written consent of the town board majority, files a description of the highway abandoned with the town clerk. NY Highway Law § 205(1).

Under the second way, when a road has limited use – it has not become "wholly disused" – a town can pursue a qualified abandonment. NY Highway Law § 205(2). A number of factors must be met under section 205(2):

- for the two prior years, the road has not been usually traveled along "the greater part" by more than two vehicles daily, in addition to pedestrians and horseback riders;
- the town highway superintendent determines that a qualified abandonment would not cause injustice or hardship to adjacent landowners or occupants;
- the town highway superintendent holds a public hearing and provides notice of the hearing to adjacent owners or occupants; and
- the town superintendent and the town board file a certificate with the town clerk describing the road and declaring a qualified abandonment for it.

Moreover, for town roads that traverse the forest preserve, a town must provide notice to this Department that it intends to proceed under section 205(2). NY Highway Law § 205-b(1)(a).

When a town concludes the process for a qualified abandonment under section 205(2), the town is relieved of all maintenance responsibilities at the public expense, but the highway is deemed available as a public easement in perpetuity, for use by adjoining landowners and others. NY Highway Law §§ 205(2), 205-b(1)(b).

As detailed in the attached Hearing Report, the record in this matter demonstrates that Old Mountain Road traverses the Towns of Keene and North Elba and has historically been a town road within those two towns. The record further demonstrates that neither the Town of Keene nor the Town of North Elba filed a certificate of abandonment pursuant to Highway Law § 205(1) – the first way that a town can abandon a road under the law. Moreover, neither town filed a certificate with their respective town clerks or provided the requisite notice to this Department for a qualified abandonment under Highway Law §§ 205(2) and 205-b(1)(a) – the second way that a town can abandon a road under the law.

Although in 2005 the Town of Keene began a process for qualified abandonment under section 205(2), it did not complete that process pursuant to the statute. Similarly, in the early 1900s, the Town of North Elba began proceedings to discontinue Old Mountain Road under

then-existing law, but it dropped that course of action and instead appropriated money to repair the road.  In recent years, neither town has maintained Old Mountain Road in any meaningful, consistent way.

Recognizing that the statutory requirements for an abandonment have not been met, Department staff attempts to establish that Old Mountain Road has been abandoned under the common law through non-use.  Department staff's own record, however, demonstrates that Old Mountain Road has been used regularly for many years (since the late 1960s or early 1970s) for a variety of activities:  bicycling, hiking, snowshoeing, cross country skiing, and horseback riding.  The record does not demonstrate non-use for any six-year period, including the six years prior to Mr. McCulley's ride down Old Mountain Road in 2005.  The lesser amount of vehicle traffic use as compared with the amount of use for other activities does not negate these other significant, regular uses.

I also decline to accept Department staff's argument that under the common law, a road can be abandoned by virtue of non-use for a specific purpose, e.g., motor vehicle use.  No definitive New York law exists to support the theory that a road can be abandoned for motor vehicle use, but not for other uses.  To the contrary, as explained above, New York law is very specific concerning the legal abandonment of a road.

I am mindful of Department staff's argument that the Town of North Elba has not listed that portion of Old Mountain Road that traverses the forest preserve as part of its inventory of town roads and that in recent history, the Town has in fact not maintained that portion of the road or exercised any actual governance over it.  Staff asserts that the Town's failure to maintain the road means that this portion of Old Mountain Road is no longer a town road.  That conclusion is not warranted.  The Town's decision to not maintain the road, and incur any attendant liability for its failure to maintain the road, is not the same as an affirmative abandonment under the applicable law.  That the Town's choice of actions here might be questionable given its legal obligations as the entity with jurisdiction over the road is irrelevant to the legal issue presented.

Old Mountain Road is also a legal right-of-way for public use.

In addition, Old Mountain Road also qualifies for the second regulatory exception to the general prohibition of operating a motor vehicle within the forest preserve – it is a legal right-of-way for public use.  6 NYCRR 196.1(b)(5).  The record amply supports this legal conclusion:  scores of people continue to use this road for a number of recreational opportunities throughout the year.

As I stated in the above discussion of Highway Law § 205, I decline here, too, to adopt Department staff's argument that the discontinuance of one use, e.g., motor vehicle use, means that the right-of-way has been abandoned for that use only while preserving other uses.  New York law does not contemplate a partial abandonment of a right-of-way.

The State has not exercised its jurisdiction under Highway Law § 212.

Finally, the State has not exercised its jurisdiction to discontinue the road pursuant to Highway Law § 212.  Thus, staff has not sought, nor could it benefit from, this third legal theory of the discontinuance of a road through the forest preserve.

The Towns have continuing obligations over the road.

My ruling is based on the finding that Old Mountain Road is a road that remains under the jurisdiction of the Towns of Keene and North Elba as it traverses the State forest preserve. Mr. McCulley's application, accordingly, is not without consequence for the towns as he has succeeded in establishing that both towns bear the responsibility to maintain the road in a way that will allow safe passage for the multitude of uses on it, including cross country skiing, snowshoeing, walking, horseback riding, and the operation of all terrain vehicles, snowmobiles, and motor vehicles.  In particular, the record here demonstrates that dozens of people use Old Mountain Road for cross country skiing on the winter weekends.  The road also provides numerous hikers with access to a popular area for rock climbing.  Adding motor vehicles to the mix of these uses can present a host of liability issues for the towns, and I would accordingly urge the towns to take notice of the potential for incompatible uses.

Although Mr. McCulley has pressed the issue here by backing his pickup truck for just a few feet down Old Mountain Road, the record clearly establishes that Old Mountain Road, as it courses through the forest preserve, is a gravel and dirt road that is not suitable for travel by automobiles or pickup trucks.  Simply stated, this gravel and dirt road that runs through the forest preserve does not conform to current highway standards.  To the extent that automobiles or pickup trucks attempt to drive on it, the towns may be liable for any adverse consequences to drivers, to their vehicles, and of course to other users of the road.

I would note, as Judge McClymonds has, that neither Mr. McCulley nor the organization that he heads, the Lake Placid Snowmobile Club, have undertaken any measures to improve Old Mountain Road for their asserted use.  In contrast, beginning in 1986, the Adirondack Ski Touring Council has spent countless hours of volunteer time to improve Old Mountain Road for recreational purposes that do not involve motorized vehicles.  Those significant efforts are likely to change if Old Mountain Road becomes a widely-used destination for snowmobile use.

I further recognize that the Department's position regarding the status of Old Mountain Road has changed over time.  For a time, the Department considered the road to be a town road, and more recently, an abandoned road.  As demonstrated above, however, the law provides a clear, definitive framework for ascertaining a road's status, and I am bound to apply that law here.

Finally, the Chief ALJ correctly points out that for a road that traverses State lands, the law also provides the State with the right to discontinue the road (NY Highway Law § 212), and

he recommends that I exercise that jurisdiction over Old Mountain Road here.  The potential applicability of that section is outside the scope of the issues presented in this matter, and it is not material to the determination of this case, which hinges on whether Department staff met its burden on this specific set of facts.

In conclusion, based on the law and the facts in this matter, Judge McClymonds recommended in his Hearing Report that I grant Mr. McCulley's motion to dismiss this enforcement proceeding against him on the ground that Department staff has not demonstrated that Old Mountain Road was, as a matter of law, an abandoned road pursuant to New York Highway Law sections 205(1) (abandonment after six years) and 205(2) (qualified abandonment) or that the road is not a legal right-of-way for public use.  Based on the record before me, and subject to my comments above, I agree with this recommendation.

NOW, THEREFORE, having considered this matter, and being duly advised, it is ORDERED that respondent's motion to dismiss the complaint is granted.

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION

/s/

By:    _____
        Alexander B. Grannis
        Commissioner

Dated: Albany, New York
        May 19, 2009

TO:

Mr. James W. McCulley                                    (VIA CERTIFIED MAIL)
104 Alford Lane
Lake Placid, New York 12946

Matthew D. Norfolk, Esq.                                 (VIA CERTIFIED MAIL)
Briggs Norfolk LLP
2284 Saranac Avenue
Lake Placid, New York 12946

Charles E. Sullivan, Jr., Esq.                           (VIA INTRA-AGENCY MAIL)
New York State Department of
        Environmental Conservation
Office of General Counsel
625 Broadway, 14th Floor
Albany, New York 12233-5500

STATE OF NEW YORK
DEPARTMENT OF ENVIRONMENTAL CONSERVATION
625 BROADWAY
ALBANY, NEW YORK 12233-1010


In the Matter

- of -

the Alleged Violation of Article 9 of the
Environmental Conservation Law ("ECL") and
Part 196 of Title 6 of the Official
Compilation of Codes, Rules and Regulations
of the State of New York ("6 NYCRR"),

- by -

**JAMES W. McCULLEY,**

Respondent.


DEC Case No. R5-20050613-505



HEARING REPORT
OF THE CHIEF ADMINISTRATIVE LAW JUDGE

March 27, 2009

<u>Appearances of Counsel</u>:

        --   Alison H. Crocker, Deputy Commissioner and General
        Counsel (Charles E. Sullivan, Jr., of counsel), for the
        Department of Environmental Conservation

        --   Briggs Norfolk LLP (Matthew D. Norfolk of
        counsel), for respondent James W. McCulley


HEARING REPORT OF THE CHIEF ADMINISTRATIVE LAW JUDGE

<u>PROCEEDINGS</u>

Staff of the Department of Environmental Conservation ("Department") commenced this administrative enforcement proceeding against respondent James W. McCulley by service of a notice of hearing and complaint dated June 10, 2005.  In its complaint, Department staff alleged that on May 22, 2005, respondent operated a motorized vehicle in the forest preserve in violation of section 196.1(a) of title 6 of the Official Compilation of Codes, Rules, and Regulations of the State of New York ("6 NYCRR").  The alleged violation arose from respondent's operation of a pickup truck on a single-lane road, variously known as "Mountain Lane," "Old Mountain Road," "Old Military Road," or "Jackrabbit Trail" (hereinafter "Old Mountain Road," or "OMR"), located in the Towns of North Elba and Keene, Essex County.  The Road runs through the Sentinel Range Wilderness Area of the Adirondack Park.

Respondent filed an answer dated July 1, 2005, denying the violation, and raising seven affirmative defenses.  In a ruling dated December 4, 2006, I denied respondent's motion seeking recusal of the Commissioner and the Administrative Law Judge.  No interlocutory administrative appeal was taken from the ruling.

I subsequently issued a ruling dated September 7, 2007, on a motion by Department staff seeking dismissal of certain affirmative defenses and for an order without hearing (summary judgment) on its complaint.  In the ruling, I granted in part and otherwise denied Department staff's motion for dismissal of affirmative defenses, and dismissed respondent's first, fifth, sixth and seventh affirmative defenses, and a portion of the fourth affirmative defense.  I also directed respondent to clarify the remaining portion of his fourth affirmative defense. I otherwise denied staff's motion for an order without hearing, and set the matter down for a hearing.  Respondent clarified the

-1-

remainder of his fourth affirmative defense in a letter dated
September 21, 2007.

        The adjudicatory hearing was conducted in the
Department's Region 5 office in Ray Brook from November 13
through 15, 2007.  At the close of the Department's direct case,
respondent made an oral motion to dismiss the complaint.
Department staff declined to respond to respondent's motion on
the record.

        I reserved decision on respondent's motion, and
respondent presented his case in response to the complaint.
Respondent did not present a direct case on his remaining
affirmative defenses[1] and, accordingly, the Department did not
present a rebuttal case.

        I authorized the following post-hearing briefing:
(1) respondent filed a brief dated January 21, 2008, in support
of his renewed trial motion for dismissal of the complaint and
for a directed verdict in his favor; (2) Department staff filed a
brief dated February 25, 2008, opposing respondent's trial motion
for dismissal; (3) Department staff filed a separate closing
brief dated February 25, 2008, addressing the weight of the
evidence; and (4) respondent filed a closing brief dated April
14, 2008, in response to Department staff's closing brief.  With
the filing of respondent's closing brief, the hearing record
closed.

                        FINDINGS OF FACT

Location of Incident

1.      The incident giving rise to the Department's charge
against respondent occurred on a portion of Old Mountain Road

───────────────

        [1]  The affirmative defenses respondent raised in his answer
were (1) res judicata and collateral estoppel, (2) failure to
state a claim, (3) documentary evidence, (4) validity of
Executive Law § 816, (5) unlawful enforcement of rules and
regulations, (6) abuse of process, and (7) laches.  After my
September 7, 2007 ruling, the affirmative defenses that remain
are the second, third, and that portion of the fourth as raised
an as-applied constitutional challenge to Executive Law § 816.
The second affirmative defense, which is not properly pleaded as
a defense (see, e.g., Pump v Anchor Motor Freight, Inc., 138 AD2d
849, 850-851 [3d Dept 1988]), was rendered academic by
respondent's motion to dismiss.

located in the Town of North Elba.  The Road begins in the west at an intersection with New York State Route 73 southeast of the Village of Lake Placid.  The Road continues in a north-easterly direction along the northern side of Pitchoff Mountain, and ends in the east in the parking lot of the Adirondack Rock and River Guide Service located at the western end of Alstead Hill Lane in the Town of Keene.

2.      The first nine-tenths of a mile of the western-most end of Old Mountain Road is maintained by the Town of North Elba.[2] Traveling east, the road is improved first with paving and then with gravel.[3]  The gravel portion ends on private land with a turnaround area.[4]  Since 2005, the portion of the Road from the intersection with Route 73 to the turnaround area is known as Mountain Lane.[5]

3.      At the intersection with Route 73, the Road is marked with a "dead end" sign.[6]  A parking area is also located at the intersection with Route 73.[7]

4.      Both a "dead end" sign and pedestrian walkway sign are located at the easternmost end of the turnaround area.[8]  As of September 2007, a boulder located between the dead end sign and the pedestrian walkway sign was spray-painted with the word "Keene" and an arrow in bright orange paint.[9]

5.      Past the eastern end of the turnaround on Mountain Lane, Old Mountain Road continues as an unpaved road across

---

[2]  Pratt Testimony ("Test"), Transcript ("Tr") at 345; Hathaway Test, Tr at 370; Harlow Test, Tr at 396.

[3]  Hathaway Test, Tr at 377-378.

[4]  LaPierre Test, Tr at 121; Hathaway Test, Tr at 370, 378.

[5]  Hathaway Test, Tr at 377.

[6]  LaPierre Test, Tr at 121; Hathaway Test, Tr at 370; Martin Test, Tr at 515.

[7]  Harlow Test, Tr at 397.

[8]  LaPierre Test, Tr at 121; Eggleton Test, Tr at 257; see DEC Exh 1, photo 7; DEC Exh 2, photo 1; DEC Exh 35, photos 1-3; DEC Exh 36, photos 1, 2.

[9]  See DEC Exh 2, photo 1.

private land.  The Road crosses onto State-owned land about 230 feet beyond the turnaround,[10] and continues over State-owned land, across the Town of North Elba/Town of Keene border, and on to the Town of Keene in the east, where it crosses back over privately owned land before connecting with Alstead Hill Lane. The entire unpaved portion of Old Mountain Road from the turnaround in the west to Alstead Hill Lane in the east is about 3.5 miles in length.[11]

6.      The State lands over which Old Mountain Road passes are part of the Sentinel Range portion of the forest preserve and are designated as Wilderness Area in the Adirondack Park State Land Master Plan.[12]

7.      Since at least 2001, the western boundary of State-owned land has been posted with several signs in the vicinity where Old Mountain Road crosses onto State-owned land.[13]  On the date of the incident at issue, the signs included a Department "No Bicycles" sign, a Department "No Motorized Equipment, No Motorized Vehicle, No Motorized Boats, No Aircraft, No Snowmobiles" sign, and a "Forest Preserve Wilderness Area"

---

[10]   See DEC Exh 20.

[11]   Eggleton Test, Tr at 248; Martin Test, Tr at 507.

[12]   Eggleton Test, Tr at 248.  See State of New York, Adirondack State Land Master Plan (updated 2001), at 65-66.

The 1972, 1979, 1987, and 2001 versions of the State Land Master Plan were the subject of a pre-hearing motion by Department staff.  In the motion, staff requested that the ALJ take official notice of the Plans (see 6 NYCRR 622.11[a][5]).  At the hearing, respondent objected on grounds of relevance and materiality.  Upon respondent's request, I reserved decision at the hearing (see Hearing Transcript, at 16, 18).

I conclude that the Plans are relevant and material to the Department's designation of the Sentinel Range as Wilderness Area, and to the Department's guidelines for the management and use of Wilderness Areas.  Accordingly, I take official notice of the Plans to this extent.

[13]   LaPierre Test, Tr at 156-157.

-4-

sign.[14]

8.      The Old Mountain Road is not part of the Limekiln Lake-Cedar River Road.[15]

May 22, 2005 Incident

9.      On May 22, 2005, at approximately 9:30 A.M., respondent James W. McCulley approached the turnaround at the end of Mountain Lane in his white 1998 Chevrolet pick-up truck.[16] Respondent turned the truck around in the turnaround, and backed down the unpaved trail traveling east towards the boundary with State-owned land.[17]  Respondent continued backing the truck down the trail, crossed the boundary line between privately-owned and State-owned land, and parked his truck on the trail approximately 30 feet east of the boundary line.[18]

10.      After taking a picture of respondent's truck parked on the trail, New York State Forest Ranger LaPierre asked respondent to remove his truck.[19]  Respondent then drove his truck along the trail and back to the turnaround on Mountain Lane.[20]  Ranger LaPierre then issued respondent an Environmental Conservation Appearance Ticket ("ECAT") for driving a motor vehicle on forest preserve land.[21]

_____

     [14]  See DEC Exh 1, photo 11.  The signs were re-posted the morning of the May 22, 2005, incident, just prior to respondent McCulley's arrival at the State-land boundary line (LaPierre Test, Tr at 123-124; Jubin Test, Tr at 773-775).  Signs previously posted had been removed after respondent McCulley was acquitted in People v McCulley (7 Misc 3d 1004[A] [County Ct, Essex County 2005]]) (Jubin Test, Tr at 774).

     [15]  See LaPierre Test, Tr at 178-179; Martin Test, Tr at 541.

     [16]  LaPierre Test, Tr at 124.

     [17]  Id.

     [18]  Id.; see DEC Exh 1, photo 12; DEC Exh 20.

     [19]  LaPierre Test, Tr at 124; DEC Exh 1, photo 12.

     [20]  LaPierre Test, Tr at 124.

     [21]  Id.

11.     The charges in the ECAT were originally brought in Town Court, Town of North Elba, but subsequently withdrawn on June 13, 2005. This administrative enforcement proceeding was commenced the next day by service of an administrative complaint dated June 10, 2005. The complaint alleges that respondent violated 6 NYCRR 196.1 by operating a motorized vehicle in the forest preserve on May 22, 2005, and seeks imposition of a civil penalty.

12.     At the time of the incident, respondent McCulley did not possess a temporary revocable permit from the Department to operate a motor vehicle on forest preserve land.[22]

Condition of Old Mountain Road

13.     Photos of the Old Mountain Road east of the turnaround taken in December 2001, May 2005, July 2005, September 2007 and October 2007 reveal a clearly-defined trail passing through a heavily wooded area.[23] At the border with State land, the trail is seven to eight feet wide with two parallel worn tire ruts.[24] The trail eventually becomes a single worn path about seven to eight and a half feet wide.[25]

14.     Metal and plastic culverts and stone-lined water diversions known as French drains cross the Road at several locations. In addition, stone-lined drainage ditches are constructed adjacent to the Road in several places to channel water away from the traveled portion of the Road and to prevent erosion.

15.     Near the North Elba/Keene border, the Road passes by two beaver ponds. The Road skirts the first beaver pond to the pond's north. In the winter of 2001, the beaver pond inundated the Road.[26] In July 2005, however, the water had receded,

---

[22]   Martin Test, Tr at 650.

[23]   DEC Exhs 1, 2, 19, 35, 36; see also Harlow Test, Tr at 399, 413.

[24]   See, e.g., Reynolds Test, Tr at 102-103; DEC Exh 2, photo 14, 15.

[25]   See, e.g., Reynolds Test, Tr at 118.

[26]   DEC Exh 35, photo 14.

uncovering the road.[27]

16.     The second beaver pond, which has existed since at
least 1976, often completely inundates a portion of the Road's
bed near the North Elba/Keene border.[28]  The Road is clearly
distinguishable, however, both entering and leaving the northern
edge of the second beaver pond.[29]  Moreover, the placement of a
culvert in the roadbed crossing the pond indicates that the Road
is dry at times.[30]  The placement of ski trail markers on trees
adjacent to the culvert demonstrates that the Road is passable in
the winter.[31]  During winter months, a user of the Road could
cross the frozen pond at the location of the Road's roadbed.[32]

17.     A trail has been blazed around the southern edge of the
second beaver pond.[33]  The trail leaves the roadbed of the Old
Mountain Road west of the beaver pond, travels around the pond to
the south, and reconnects with the Road east of the beaver pond.
The trail traveling around the second beaver pond to the south is
depicted on the United States Geological Survey map for the area
and, thus, has been in existence at least since 1976.[34]

18.     At a location on the Road to the west of the beaver
ponds, a small wooden foot bridge is constructed across a stone-
lined water diversion.[35]  At a location on the Road between the
two beaver ponds, another small wooden foot bridge is constructed

---

[27]  Martin Test, Tr at 535; DEC Exh 36, photos 22-25.

[28]  Martin Test, Tr at 512, 513, 570-571; DEC Exh 2, photos
37-43;  Capone Mem (1976), DEC Exh 63, Tab A.  The second beaver
pond has inundated a portion of the Road since at least 1976
(Capone Mem (1976), DEC Exh 63, Tab A; Healey Mem [1987], DEC Exh
63, Tab F [Resp Exh 6]).

[29]  Martin Test, Tr at 644-645; DEC Exh 35, photo 26; DEC
Exh 36, photos 46-49, 53, 57.

[30]  Martin Test, Tr at 641-642; DEC Exh 36, photos 46-49.

[31]  Martin Test, Tr at 642, 646-647; DEC Exh 36, photo 46.

[32]  Martin Test, Tr at 646-647.

[33]  DEC Exh 36, photos 50-61.

[34]  See DEC Exh 30, Map 4.

[35]  DEC Exh 35, photo 12.

across a small, intermittent stream bed.[36]

19.      At the North Elba/Keene border, the Road passes between a group of four trees.[37]  The trees bordering the Road are between 48 and 70 years old.[38]  The distance between the trees where the Road runs is about eight and one-half feet.[39]

20.      Periodically along the Road on the North Elba side, trees are marked with "NYS Department of Environmental Conservation Ski Trail" signs.[40]

21.      On the Keene side of the border, the Road passes several more beaver marshes, and one large flooded beaver pond at the far end of the trail before the Adirondack Rock and River Guide Service in the Town of Keene.[41]  The record is not clear whether any of the beaver marshes on the Keene side entirely flood the Road.

Uses of Old Mountain Road

22.      During the winter months, Old Mountain Road sees a "tremendous" amount of cross-country ski use on weekends, with dozens of skiers using the Road at any given time.[42]  The Road has seen extensive cross-country skiing use since at least the late 1970s as a link between North Elba and Keene.[43]  The Road is

---

[36]  Reynolds Test, Tr at 114; DEC Exh 2, photo 35.

[37]  DEC Exh 2, photo 49.

[38]  Reynolds Test, Tr at 80.

[39]  Id. at 117-118.

[40]  See, e.g., DEC Exh 2, photo 9, 10, 45.

[41]  Martin Test, Tr at 512.

[42]  LaPierre Test, Tr at 159, 161-162, 174; see also, e.g., Palen Test, Tr at 420-421 [20-30 skiers on a weekend]; Goodwin Test, Tr at 441-442 [50-60 skiers on a good day]; Fadden Test, Tr at 730 [20-30 skiers], 732; Jubin Test, Tr at 771, 776.

[43]  See Shea Letter (1978), DEC Exh 63, Tab B (Resp Exh 2); MacKenzie, History of the Northwest Bay-Hopkinton Road, 29 Franklin Historical Review 10 (1992-1994), DEC Exh 34 (hereinafter MacKenzie Article).

also used by ice climbers for access to rockclimbing locations off the Road, and by snowshoers.[44]  In more recent years, parking is often a problem in the parking lot at the intersection of Route 73, and at the turnaround at the end of Mountain Lane due to the significant amount of public use of the Road.[45]

23.      In non-winter months, the trail is used by hikers, hunters, bicyclists, and horseback riders.[46]  The Road has also seen these uses since at least the late 1970s.[47]  As in the winter, the Road is often used to travel through to Keene. Although the public's use of the Road decreases in the non-winter months, the level of use is still significant.[48]

24.      Although more limited than non-motorized uses, Old Mountain Road has seen motorized vehicle use as well.  The most significant motor vehicle use of the Road is snowmobile use in the winter.[49]  In the 1960s and 1970s, the Road saw a significant amount of snowmobile use.[50]  Snowmobile use dropped off by the mid-1980s.[51]  Nevertheless, the Road is still occasionally used

---

[44]  LaPierre Test, Tr at 136, 160; Harlow Test, Tr at 413-414; Fadden Test, Tr at 727, 730; Jubin Test, Tr at 771.

[45]  LaPierre Test, Tr at 159-160; Harlow Test, Tr at 415; Fadden Test, Tr at 727; Jubin Test, Tr at 771-772, 776.

[46]  See, e.g., LaPierre Test, Tr at 136; Pratt Test, Tr at 361; Harlow Test, Tr at 400; Palen Test, Tr at 420-421; Goodwin Test, Tr at 442; Fadden Test, Tr at 726, 729-730, 732-733; Jubin Test, Tr at 771, 776.

[47]  See Shea Letter (1978), DEC Exh 63, Tab B (Resp Exh 2); MacKenzie Article, DEC Exh 34, at 10.

[48]  Palen Test, Tr at 421 [2-4 hikers per day]; Goodwin Test, Tr at 442; Fadden Test, Tr at 732-733.

[49]  Harlow Test, Tr at 399, 403, 416; Palen Test, Tr at 424; Goodwin Test, Tr at 442; Fadden Test, Tr at 730-731; Jubin Test, Tr at 771-776.

[50]  Pratt Test, Tr at 356-357, 360; Hathaway Test, Tr at 379-380.

[51]  ASTC Letter (2003), Resp Exh 17.

by snowmobiles every winter.[52]

25.      With respect to other forms of motorized vehicle use,
the Old Mountain Road has been passable by four-wheel drive
("4WD") vehicles since at least the late 1960s.[53]  The Road saw
significant use by all-terrain vehicles ("ATVs"), 4WDs and trucks
during the 1960s and 1970s, until the Department started
discouraging motorized vehicle traffic on the Road.[54]  Since
then, the Road's use by motorized vehicles has been occasional.
A six-wheel vehicle with a sled was used on the Road once in
Spring 2007 to rescue an injured ice climber.[55]  The occasional
use of trucks, ATVs and 4WDs on the Road has also been observed
since the 1980s.[56]  The Road has seen virtually no personal
automobile use in over 50 years.[57]

26.      The portion of Old Mountain Road that passes over State
land in the Sentinel Wilderness Area is not used to access
private property or Departmental campgrounds.[58]  No one lives on
the Road between the turnaround on Mountain Lane and Alstead Hill
Lane.[59]


History of Old Mountain Road

27.      The portion of Old Mountain Road involved in this

---

[52]  Harlow Test, Tr at 403, 416; Palen Test, Tr at 424;
Goodwin Test, Tr at 442-445; Fadden Test, Tr at 730-731; Manning
Letter (1991), DEC Exh 63, Tab I.

[53]  Pratt Test, Tr at 347; Hathaway Test, Tr at 379; Palen
Test, Tr at 423; Healey Mem (1987), DEC Exh 63, Tab F (Resp Exh
6).

[54]  Hathaway Test, Tr at 379-380.

[55]  Harlow Test, Tr at 416; Fadden Test, Tr at 736.

[56]  See, e.g., Palen Test, Tr at 423, 428; Goodwin Test, Tr
at 442; Fadden Test, Tr at 730-731; Jubin Test, Tr at 771;
Manning Letter (1991), DEC Exh 63, Tab I.

[57]  Eggleton Test, Tr at 312; Palen Test, Tr at 421 (one use
by automobile in 1988); McKenzie Article, DEC Exh 34, at 10.

[58]  Eggleton Test, Tr at 256; White Affidavit, DEC Exh 44.

[59]  Hathaway Test, Tr at 375.

proceeding is part of a larger road historically known as the
Northwest Bay-Hopkinton Road.[60]  Traveling from the east, the
Northwest Bay-Hopkinton Road began in what is now Westport on
Lake Champlain, and traveled west through what is now
Elizabethtown, Keene, Lake Placid, Ray Brook, Saranac Lake, Paul
Smiths, McCollums, Santa Clara, and St. Regis Falls.[61]  The road
ended in Hopkinton in St. Lawrence County.[62]

28.     The Northwest Bay-Hopkinton Road, also known as Old
Military Road, was begun in the late 18th, early 19th century by
landowners in great tract numbers one and two of Macomb's
Purchase seeking to connect their properties with markets in the
south of the State.[63]  After a bridge built by landowners across
the Saranac River was washed out by a flood in 1809, the New York
State Legislature passed an act in 1810 to establish and improve
the Northwest Bay-Hopkinton Road ("1810 Act").[64]  The 1810 Act
directed that the road be surveyed and mapped.  The Act further
provided that upon the filing of the map and survey in the
various counties and towns through which the road passed, the
"road shall be deemed and taken to be a legal and public
highway."[65]  The Act also established a commissioner responsible
for the repair and maintenance of the road with money levied
against the towns.  After the four-year term of the Commissioner
expired, the "road shall be repaired and maintained in the same
manner as the other public roads in the several towns in which it
shall lie."[66]  In a separate act, the Legislature also
appropriated $1,000 to rebuild the bridge across the Saranac

---

[60]   MacKenzie Article, DEC Exh 34, at 9.

[61]   Id. at 5.

[62]   Id.

[63]   Id. at 4.  See also L 1810, ch CLXXVII; New York State
Dept. of Envtl. Conservation, Adirondack Map, Centennial Edition
(1985), Nos. 1 & 2 (hereinafter NYSDEC Adirondack Map, DEC Exh
17) (showing location of Macombs Purchase Great Tract Nos. 1 &
2); Map, State of New York (1796), DEC Exh 45 (showing Macombs
Purchase).

[64]   L 1810, ch CLXXVII.

[65]   Id. § I.

[66]   Id. § III.

River and to repair the road.[67]  Neither act appropriated money
for the purchase of property over which the road passed.

29.      In 1812, the Legislature appropriated an additional
$3,000 for the opening and improvement of the Northwest Bay-
Hopkinton Road "between the west line of the old military tract
so called, and the dwelling house of Zadock Hurd, in the town of
Keene, in the county of Essex."[68]  The west line of the Old
Military Tract is located in what is now the Village of Saranac
Lake, to the west of North Elba.[69]  The Old Mountain Road is a
portion of the road for which the 1812 appropriation was
approved.

30.      In 1849, the Town of North Elba seceded from the Town
of Keene.[70]  In 1858, the Old Mountain Road portion of the
Northwest Bay-Hopkinton Road was bypassed by a road that
connected the Towns of North Elba and Keene through the Cascade
Lakes valley south of Pitchoff Mountain.[71]  In the 1920s, the
bypass was improved by the State.[72]  The improved portion is now
State Route 73.[73]  Notwithstanding the bypass, Old Mountain Road
continued to be used by local farmers, resort stagecoaches, and
later by automobiles.[74]

---

[67]  L 1810, ch CLXX, § V.

[68]  L 1812, ch CXCVI, § VI.  Additional acts of the
Legislature relating to the Northwest Bay-Hopkinton Road
including Laws of 1816, chapter CCXXXIII (appropriating $4,000 to
complete the road), and Laws of 1824, chapter CCXXXI (authorizing
assessment for the road).

[69]  Jubin Test, Tr at 758, 763-764.  See also NYSDEC
Adirondack Map No. 2, DEC Exh 17.

[70]  Jubin Test, Tr at 764.

[71]  MacKenzie Article, DEC Exh 34, at 9; see also MacKenzie
Letter (1977), DEC Exh 60.

[72]  See Fayette Affid, DEC Exh 41; see also Plans for
Improving the Cascade Lakes-Keene, County Highway, NYS Dept. of
Public Works (1927), DEC Exh 41.

[73]  Id.; MacKenzie Article, DEC Exh 34, at 9.

[74]  MacKenzie Article, DEC Exh 34, at 9.  MacKenzie suggests
that the body of abolitionist John Brown of Harper's Ferry fame
may have been transported over Old Mountain Road on the way to

31.      Maps from the 1800s show the Northwest Bay-Hopkinton Road from Westport through Elizabethtown and Keene to Hopkinton.[75]  Maps from the 1800s also specifically show the portion of the road now known as Old Mountain Road.[76]

32.      Maps produced in the 1900s continued to show Old Mountain Road.[77]

---

his farm for burial in 1859 (see id.).

[75]  See Map of the State of New York, J.H. Young (1827), DEC Exh 48; Map of State of New York, J. Calvin Smith (1841), DEC Exh 50.

[76]  See Map of State of New York, John H. Eddy (1818), DEC Exh 56; Map of County of Essex, Atlas of the State of New York, David H. Burr (1829), DEC Exh 49 (showing a portion of OMR); Map of Military Township 12 in North Elba and Keene, French (1858), Resp Exh 53; Map to Accompany a Descriptive and Historical Guide to the Valley of Lake Champlain and the Adirondacks, W.W. Ely, M.D. (1871), Resp Exh 54; Topographical Atlas of Essex County, New York, O.W. Gray & Son (1876), DEC Exh 51; Map of Adirondack Wilderness and Adjoining Territory, E. Sweet (1884), DEC Exh 57; Cyclists' Road Map, League of American Wheelman (1893), DEC Exh 52 (showing OMR as "Unridable, or unknown Road"); New York (Essex Co.), Mt. Marcy Sheet, U.S. Geological Survey ("USGS") (1895), DEC Exh 30, Map 1.  But see Map, New York Central & Hudson River Railroad, Adirondack Division (1895), DEC Exh 53.

[77]  See Map, Plans for Improving the Cascade Lakes-Keene, County Highway, NYS Dept. of Public Works (1927), DEC Exh 41; Map, State of New York Highway Survey Committee (1936), DEC Exh 62 (classifying OMR as "Class IV Temporary Road Pending Reforestation"); Map, Essex County, New York, N.Y. State Dept. of Public Works (1940), DEC Exh 40 (showing OMR as both improved and unimproved road); Mount Marcy Quadrangle, New York -- Essex Co., USGS (1953), DEC Exh 30, Map 2 (identifying "Old Military Road" as "unimproved dirt"); NYSDEC Adirondack Map No. 3, DEC Exh 17 (showing OMR as "County or Town Highway" on North Elba side of the border, and "Secondary Road" and "Trail" on the Keene side of the border); Lake Placid, New York, USGS (1999), DEC Exh 30, Map 3 (showing OMR as "unimproved road; trail"); Keene Valley, New York, USGS (1999), DEC Exh 30, Map 4 (same).  But see Map of the Adirondack Mountains, New York Central Lines (1911), DEC Exh 54; Richards Atlas of New York State, Edward L. Towle, ed. (1965), DEC Exh 55.

State's Purchase of Lots 146 and 153; Survey Maps

33.      East of the turnaround on Mountain Lane, Old Mountain
Road crosses lots 146 and 153 of the Old Military Tract, Township
12 (Thorn's Survey) before crossing the North Elba/Keene
border.[78]  In a series of tax sales from 1877 to 1900, the State
acquired the northern half and the south-east quarter of Lot 146,
and the entire lot 153.[79]  The south-west quarter of Lot 146 is
privately owned, and is the location of the turnaround.  The
border dividing the south-west and south-east quarters of Lot 146
is the location of the 2005 incident.

34.      The deeds conveying three-quarters of Lot 146 and the
whole of lot 153 to the State do not mention Old Mountain Road.[80]
However, deeds from 1982 to 1991 concerning the south-west
quarter of Lot 146 and other privately-owned lots do mention Old
Mountain Road.[81]  In addition, survey maps of the area prepared
by the State in the 20th century also reference Old Mountain
Road.[82]

Old Mountain Road in the 20th Century

35.      Old Mountain Road was first listed in town records in

---

[78]   See Survey Map of Part of Township No. 12 of the Old
Military Tract, Stephen Thorn (1805), DEC Exh 46.

[79]   See Deeds, DEC Exhs 5-8, 22-23.

[80]   See Deeds, DEC Exhs 5-8, 22-23.

[81]   See Deeds, DEC Exhs 9-13.

[82]   Map of East Part of Thorn's Survey, J.Y. McClintock
(1900), DEC Exh 33 (identifying OMR as "abandoned highway"); Map
of Part of Township 12 Old Military Tract, Wilbur F. Smith
(1921), DEC Exh 14 ("Mountain Road"); Map of Line between Twps. 1
& 12 Old Military Tract, A.H. King (1922), DEC Exh 32 ("Old
Mountain Road"); Map Showing Conveyances to the State of New
York, E.M. Merrill (1931), DEC Exh 31; Map of Part of Northern
Half of Township 12, Old Military Tract, E.M. Merrill (1935), DEC
Exh 15 ("Keene Mt. Road").  See also Map Showing Survey of
Property for Odd & Doris Anderson, Glenn D. Odone (1981), DEC Exh
16 ("Old Mountain Road").

1902[83] or 1903.[84]   In the early 1900s, the Town Board of the Town
of North Elba instituted proceedings to discontinue the Old
Mountain Road.  In 1904, however, the Town Board dropped those
proceedings and, instead, appropriated funds for the Road's
repair.[85]

36.      The Town of Keene raised funds for the repair of the
Road and bridges during the fist two decades of the 1900s.[86]  The
Town's repair of the Road continued through the early 1950s.[87]

37.      By 1940, the first half-mile of Old Mountain Road in
the Town of North Elba was graded and drained.[88]  The last three
miles in the Town of Keene was paved with gravel.[89]  By 1962, the
first mile of the Road to the turnaround in North Elba was paved
with gravel.[90]  The last mile of the Road in Keene was paved with
road mix.[91]  The unpaved portion of the Road's condition as a
dirt road continued throughout the 1900s to the present.

38.      In the late 1960s, the Town of North Elba placed
culverts and cleared brush on the unpaved portion of Old Mountain
Road.[92]

39.      In 1971, the Town of North Elba passed a snowmobile
ordinance designating Old Mountain Road as an unplowed road,

---

[83]   Capone Letter (1976), DEC Exh 63, Tab A.

[84]   Healey Mem (1987), DEC Exh 63, Tab F.

[85]   MacKenzie Notes, DEC Exh 63, Tab M; see also Resolution
(1904), Resp Exh 46.

[86]   Capone Letter (1976), DEC Exh 63, Tab A.

[87]   Id.

[88]   New York State Highway Planning Survey (1940), DEC Exh
40.

[89]   Id.

[90]   Town Road Inventory Sheet (1962), DEC Exh 40.

[91]   Id.

[92]   Pratt Test, Tr at 348-349.

unused during the winter months for automobile traffic.[93] Snowmobilers used the Road both before and after the ordinance was passed, in the 1960s and 1970s.[94]

40.     In the fall of 1975, the Town of Keene cleared trees and branches on the Keene side of Old Mountain Road, and constructed a small bridge across a stream located about 3/4 mile from the graveled portion of the road in Keene.[95]  The purpose of the maintenance was to facilitate snowmobile use of the Road.[96]

41.     In 1978, both the Towns of North Elba and Keene rejected a proposal by the Department to abandon Old Mountain Road.[97]  The Towns cited the Road's history and its extensive use for snowmobiles, cross-country skiing, and horseback riding, among others, as the grounds for opposing the closing.  In 1991, when the Department began developing a public access plan for the Adirondack Park, the Town of Keene again expressed its opposition to the closing of the Road.[98]

42.     From 1981 to 2004, the Town of North Elba reported annually to the New York State Department of Transportation ("DOT") that the length of Mountain Road from Route 73 to its end

---

[93]  Pratt Test, Tr at 356-357, 359; Snowmobile Ordinance of the Town of North Elba (1971) sec. 5(d), Resp Exh 45.  The 1971 Snowmobile Ordinance could not be located in the Town of North Elba's Town Ordinance Book in 2007 (see Whitney Affidavit, DEC Exh 65).  The failure of the ordinance to appear in the town's book in 2007 was left unexplained.

The effect of designating the Old Mountain Road as an unplowed road was to authorize use of the Road for operation of snowmobiles during the winter months, pursuant to former Conservation Law § 8-0303 (now Parks, Recreation and Historic Preservation Law § 25.05[5]).

[94]  Pratt Test, Tr at 360, 366.

[95]  Capone Letter (1976), DEC Exh 63, Tab A.

[96]  Id.

[97]  Capone Letter (1978), DEC Exh 63, Tab C; Shea Letter to DEC (1978), DEC Exh 63, Tab B (Resp Exh 2); Town Board of Town of Keene Resolution (1978), DEC Exh 63, Tab D.

[98]  Manning Letter (1991), DEC Exh 63, Tab I.

-16-

was one mile.[99]  In 2005, the Town reported that Mountain Lane (formerly known as Mountain Road) was 0.96 miles long from Route 73 to its end.[100]  Since 1981, the Town has not reported as part of its inventory of local highways that portion of Old Mountain Road past the turnaround on Mountain Lane.[101]  A Town of North Elba Highway Superintendent explained that the Town only reports to DOT or the county those town roads that receive heavy maintenance such as snow removal.[102]

43.      In the 1980s, telephone lines running through Old Mountain Road were removed.[103]

44.      Beginning in 1986, private volunteers associated with the Adirondack Ski Touring Council ("ASTC") began undertaking regular maintenance of the unpaved portions of the Road for public use.[104]  ASTC's first major effort in 1986 involved clearing several years of blowdown, mowing brush, and repairing culverts and bridges.[105]  ASTC undertook the clean up with the approval and assistance of both the Towns of North Elba and Keene.[106]  North Elba assisted the clean up in 1986, and Keene assisted in both 1986 and 1987.[107]  The assistance from Keene included use of a motorized vehicle to haul in materials to repair a bridge.[108]

45.      Also in 1987, the Department issued a temporary revocable permit ("TRP") to Wayne Failing of the Mt. Van Hovenberg B&B in Lake Placid to improve Old Mountain Road for use

---

[99]  Fay Affidavit, DEC Exh 43.

[100]  Id.

[101]  Hathaway Test, Tr at 373.

[102]  Harlow Test, Tr at 402, 406.

[103]  Jubin Test, Tr at 762, 769.

[104]  Goodwin Test, Tr at 431, 448.

[105]  Id. at 431-432.

[106]  Id. at 432-433.

[107]  Id. at 433

[108]  Id.

in cross-country skiing and horseback riding.[109]

46.      From 1988 to 1990, ASTC conducted annual routine maintenance.[110]  In 1990, ASTC obtained a TRP from the Department for maintenance work.[111]  A Department Forest Ranger used dynamite to remove boulders from the Road.[112]  The Town of Keene hauled bridge steel in with a four-wheel drive vehicle to build a bridge over a major brook on the Keene side.[113]  Keene also provided culverts.[114]  Also starting in Fall 1990, inmates from the New York State Department of Corrections Moriah Shock Incarceration Facility assisted in maintenance efforts, including re-establishing drainage ditches, placing culverts, rebuilding bridges, and hauling materials.[115]  Inmates from Moriah Shock continued to assist in maintenance through 1996.

47.      Although the ASTC's TRP expired in November 1990, the Department informed ASTC that it could continue maintenance without renewing the TRP.[116]  ASTC continued routine maintenance with assistance from Moriah Shock through 1994.[117]

48.      ASTC conducted another major clean up effort from 1995 through 1997 as a result of major floods in 1995 and 1996.[118]  In 1995, the Town of Keene provided culverts and a bull-dozer to repair a bridge and part of the Road on the Keene side.[119]  The Department Forest Ranger again assisted with boulder removal

---

[109]   Temporary Revocable Permit (1987), DEC Exh 39.

[110]   Goodwin Test, Tr at 434.

[111]   TRP (1990), DEC Exh 38.

[112]   Goodwin Test, Tr at 436.

[113]   Reed Test, Tr at 745.

[114]   Id. at 746; Goodwin Test, Tr at 476.

[115]   Goodwin Test, Tr at 434-435.

[116]   Id. at 456-457.

[117]   Id. at 435.

[118]   Id. at 435-436.

[119]   Id. at 435-436, 476; Reed Test, Tr at 747.

using explosives in 1995 and 1996.[120]  In 1997, ASTC again
received assistance from Moriah Shock.[121]

49.     In 1998, ASTC volunteers removed hundreds of trees
brought down on the Road as a result of a severe ice storm in
January 1998.[122]

50.     From 1999 through 2002, ASTC continued routine
maintenance without any additional assistance.[123]  In 2002, ASTC
entered into an Adopt-A-Natural Resource ("ANR") agreement with
the Department for the maintenance of Jackrabbit Trail, of which
the Old Mountain Road is a part.[124]  ASTC has since conducted
routine maintenance of the Road pursuant to the 2002 ANR
agreement.[125]

51.     When ASTC began maintenance activities in the late
1980s, ASTC's Executive Director Anthony Goodwin, who was in
charge of the activities, did not seek the Department's approval
because he understood that Old Mountain Road was a town road.[126]
He was also aware that as late as 1996, the Department had
expressed the view that the Road was a town road and, therefore,
the Department lacked the authority to regulate motor vehicle
traffic on the Road.[127]

52.     In 2002, the Department changed its position concerning
the status of Old Mountain Road.  In July 2002, the Department
informed the Towns of North Elba and Keene that due to the lack
of maintenance of the unpaved portion of the Road by the towns,
and the lack of motor vehicle use as defined by DOT, the Road was

---

[120]  Goodwin Test, Tr at 437.

[121]  Id. at 438.

[122]  Id.

[123]  Id.

[124]  Id. at 438-439.  See also Adopt-A-Natural Resource
Agreement (2002), DEC Exh 37.

[125]  Goodwin Test, Tr at 461-466.

[126]  Goodwin Test, Tr at 450.

[127]  Id. at 451-453.  See also Wahl Letter (6-7-1996), DEC
Exh 63, Tab K; Wahl Letter (11-13-1996), DEC Exh 63, Tab L (Resp
Exh 13).

-19-

abandoned.[128]  Accordingly, the Department asserted that
snowmobiles, ATVs and other motor vehicles are not permitted on
the Road, as provided for in the Adirondack Park State Land
Master Plan.[129]  In August 2002, the Department further notified
the Town of North Elba that, although the Adirondack Park State
Land Master Plans for 1972, 1979, and 1985 identified Old
Mountain Road as either a snowmobile or Jeep trail, the 1987 and
2001 Plans indicated that the Road was closed.[130]

53.     Also in 2002, respondent McCulley, on behalf of the
Lake Placid Snowmobile Club, of which he has been president since
1999, inquired of the Department concerning the use of Old
Mountain Road for snowmobiles.  The Department informed
respondent of its view that the Road had been abandoned due to
the lack of highway maintenance or motor vehicle traffic for over
a decade, or maybe longer.[131]  The Department also informed
respondent that the Road was closed to snowmobiles, ATVs and
other motor vehicles.

54.     In 2005, the Town Board of the Town of Keene approved
the qualified abandonment of Old Mountain Road (see Highway Law
§§ 205[2], 205-b).[132]  The Town Board of the Town of North Elba
has taken no formal action abandoning the Road.  In addition, the
Department has not issued a formal order pursuant to Highway Law
§ 212 closing the Road.[133]

55.     Periodically, large boulders have been placed in the
roadbed of Old Mountain Road, only to be removed later.[134]  The
latest example was in May 2007, when Mr. Goodwin and two
volunteers from the ASTC placed a large boulder, partially

---

[128]  Martin Letter (7-17-2002), DEC Exh 63, Tab T (Resp Exh
15).

[129]  Id.  See also Adirondack Park State Land Master Plan
(updated 2001), at 23.

[130]  Martin Letter (8-30-2002), DEC Exh 63, Tab X (Resp Exh
16).

[131]  Martin Letter (7-12-2002), DEC Exh 63, Tab R (addressed
to Mr. Jim McCulley, Lake Placid Snowmobile Club).

[132]  Reed Test, Tr at 748-750.

[133]  Resp Motion in Limine, Tr at 40-41.

[134]  Martin Test, Tr at 542-543; Jubin Test, Tr at 776.

-20-

blocking the Road, just to the east of the dead end sign at turnaround on Mountain Lane.[135]  In response to complaints from property owners on Mountain Lane, the boulder was removed in October 2007 by the Town of North Elba.[136]  In the last several years, the Town of North Elba has not conducted any maintenance on the Road because the Department has not issued it any TRPs.[137]


<u>DISCUSSION</u>

<u>Standards of Review</u>

        In an administrative enforcement proceeding conducted pursuant to 6 NYCRR part 622 ("Part 622"), Department staff bears the ultimate burden of proof on all charges and matters affirmatively asserted in the instrument that initiated the proceeding, in this case, the 2005 complaint (<u>see</u> 6 NYCRR 622.11[b][1]).  Whenever factual matters are involved, the party bearing the burden of proof must sustain that burden by a preponderance of the evidence unless a higher standard has been established by statute or regulation (<u>see</u> 6 NYCRR 622.11[c]).

        Notwithstanding the Department's ultimate burden of proof on all charges alleged in the complaint, a party making a motion during a Part 622 proceeding bears the burden of proof on that motion (<u>see</u> 6 NYCRR 622.11[b][3]).  Thus, respondent carries the burden of proof on his renewed trial motion to dismiss the complaint.

        This report first addresses respondent's motion to dismiss, then discusses whether Department staff has carried its burden of proof on all matters alleged in the complaint.


<u>Respondent's Motion to Dismiss</u>

        Although Part 622 authorizes trial motions generally (<u>see</u> 6 NYCRR 622.6[c][1]), it does not specify the standard to be applied to a trial motion seeking dismissal of the complaint.  As respondent argues, it is appropriate in this context to apply the

---

[135]  Goodwin Test, Tr at 467-472.

[136]  Hathaway Test, Tr at 381-385; Harlow Test, Tr at 399-400; Fadden Test, Tr at 733-735.

[137]  Harlow Test, Tr at 401.

-21-

standard applied by courts to decide a CPLR 4401 motion for judgment as a matter of law made at the close of the non-moving party's case (see, e.g., Matter of Makhan Singh, Commissioner's Decision and Order, March 19, 2004, at 2 [2004 WL 598989, *1]; Matter of New York City Dept. of Envtl. Protection, Chief ALJ Ruling, Oct. 31, 2005, at 4 [2005 WL 2921251, *2]; Matter of Gramercy Wrecking and Envtl. Contrs., Inc., ALJ Ruling, Jan. 14, 2008, at 8).

Pursuant to CPLR 4401, a judgment as a matter of law is appropriate where the court finds that, "upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]).  The moving party has the burden of showing that, upon viewing all the evidence in the light most favorable to the non-moving party and affording the non-moving party every inference that may properly be drawn from the facts, the non-moving party has not made out a prima facie case (see Gold v Di Cerbo, 41 AD3d 1051, 1052-1053 [3d Dept 2007]; Holy Temple First Church of God in Christ v City of Hudson, 17 AD3d 947, 947 [3d Dept 2005]; Bopp v New York Elec. Vehicle Transp. Co., 177 NY 33, 35 [1903]).

Department staff alleges that respondent McCulley violated 6 NYCRR 196.1(a).  Section 196.1 provides:

> "(a)  No person shall operate a motorized vehicle in the forest preserve except as permitted in subdivisions (b) * * * of this section.

> "(b)  Operation of motorized vehicles is permitted on roads:

>> (1)  that are under the jurisdiction of the State Department of Transportation or a town or county highway department, in accordance with applicable State and local laws;

>> * * *; or

>> (5)  where a legal right-of-way exists for public or private use."

Thus, to prevail on his motion, respondent has the burden of showing that Department staff has not made a prima facie showing that respondent operated a motorized vehicle in the forest preserve and that Old Mountain Road is not one of the roads or legal rights-of-way specified by subdivision (b) of section

196.1.

     1.  <u>Forest Preserve</u>

     Respondent argues that Old Mountain Road is not forest preserve and, thus, as a matter of law, respondent could not have violated section 196.1.  Citing the decision and judgment in <u>People v Paul Smith's Elec. Light and Power and R.R. Co.</u> (Sup Ct, Essex County, Imrie, J., Judgment Nov. 16, 1953 [Resp Exh 42]), respondent contends that the land within the roadbed of highways and roads that pass through the forest preserve are not forest preserve lands.

     I conclude that Department staff has established that when the State acquired the land within the roadbed of Old Mountain Road, the land became part of the forest preserve subject, however, to a public easement for passage.  The Northwest Bay-Hopkinton Road, of which Old Mountain Road is a portion, was a public highway established by statute (<u>see</u> <u>City of Cohoes v Delaware & Hudson Canal Co.</u>, 134 NY 397, 402 [1892]).  A road is a public highway if the public has a general right of passage over the road (<u>see</u> <u>People v County of Westchester</u>, 282 NY 224, 228 [1940]).  The 1810 Act that established and provided for the improvement of the Northwest Bay-Hopkinton Road expressly declared that the "road shall be deemed and taken to be a legal and public highway" upon the filing of a map of the road in the various towns through which it passed (L 1810, ch CLXXVII; <u>see also</u> <u>Bashaw v Clark</u>, 267 AD2d 681, 684 [3d Dept 1999] [act of public authority declared road to be a public highway by directing that road be recorded as a public highway]; <u>Parker v Van Houten</u>, 7 Wend 145 [1831] [public highway fully established upon filing and recording of survey of road]).

     When the Legislature established the Northwest Bay-Hopkinton Road, however, it did not provide for the acquisition of or compensation for the property over which the road passed.  Nor was evidence adduced indicating that fee owners conveyed title to the roadbed to the State at the time the road was established as a public highway.  Therefore, under the 1810 Act, the public acquired merely an easement of passage over the road, and the incidental right to do all acts necessary to keep it in repair (<u>see</u> <u>Bashaw</u>, 267 AD2d at 684-685; <u>Matter of County of Suffolk [Arved, Inc.]</u>, 63 AD2d 673, 674 [2d Dept 1978]).  The owners of the underlying properties retained their fees and all rights of property not incompatible with the public easement (<u>see id.</u>).

     The forest preserve in the Adirondacks and Catskills

-23-

was subsequently created by chapter 283 of the Laws of 1885,
which provided in relevant part:

> "All lands now owned or which may hereinafter
> be acquired by the state of New York within
> the counties of . . . Essex .. shall
> constitute and be known as the forest
> preserve."

(L 1885, ch 283, § 7 [now codified at Environmental Conservation
Law ("ECL") § 9-0101(6)]).  No evidence was presented that any
owners in the State's chain of title to the parcels reserved to
themselves the roadbed of the Old Mountain Road.  Thus, when the
State acquired title to the parcels underlying the Old Mountain
Road, the State acquired those fees in their entirety, including
the roadbed, subject only to the public's easement of passage
(see generally Matter of Moncure v New York State Dept. of Envtl.
Conservation, 218 AD2d 262, 267 [3d Dept 1996] [when the State
takes title to property encumbered by the interest of another, it
takes title subject to that interest]).  So long as the public's
right to use the easement was not interfered with, the existence
of the easement did not prevent the State from designating the
parcels acquired, including the roadbed underlying the public
highway, as forest preserve land pursuant to chapter 283.

     Respondent argues that under Moncure, because the State
only acquired a "reversionary" interest in the Old Mountain Road
roadbed, that roadbed is not forest preserve land.  I do not
agree, however, with respondent's reading of Moncure, even
putting aside the question whether the State's interest in the
roadbed is properly characterized as a "reversionary" interest.
In Moncure, the Department purchased property in the Catskills
subject to a lease.  The leasehold, in turn, had a
telecommunication tower built upon it.  The Department argued
that the tower was prohibited by the "forever wild" clause of the
New York Constitution, which provides that forest preserve land
"shall be forever kept as wild forest lands" (NY Const, art XIV,
§ 1).  The court rejected the Department's claim, stating that
because the Department "did not own the property covered by the
leasehold, having only acquired [the lessor's] reversionary
interest and taken the property subject to the lease, we find
this constitutional provision inapplicable" (id. at 267).

     In Moncure, the property covered by the leasehold was
the telecommunication tower, not the underlying parcel.  Because
the Department did not acquire the leasehold and, thus, did not
acquire the tower, the court concluded that article XIV did not
apply.  At most, Moncure stands for the proposition that property

-24-

interests not acquired by the State are not forest preserve land. In <u>Moncure</u>, the property interests not acquired by the State were the leasehold and the telecommunication tower.  In this case, the interest not acquired by the State upon acquisition of the underlying parcels was the public easement.  The court in <u>Moncure</u> did not hold that the interest acquired by the State was not forest preserve land simply because that interest was encumbered by another interest, in that case a leasehold.  Thus, <u>Moncure</u> does not support the conclusion that the roadbed of the Old Mountain Road is not forest preserve land simply because it was encumbered by a public highway upon acquisition by the State.

Similarly, <u>Paul Smith's</u> does not compel the conclusion asserted by respondent.  <u>Paul Smith's</u> concerned the question whether the New York State Public Works Department (a predecessor to the Department of Transportation), which was authorized by statute to supervise highways maintained with State money, had jurisdiction to permit the construction of a power transmission line over a section of the Northwest Bay-Hopkinton Road crossing forest preserve lands between Lake Placid and Saranac Lake, or whether the Conservation Department (a predecessor to the Department) retained jurisdiction to deny the construction. Concluding that permitting the construction of power transmission lines fell within the jurisdiction of Public Works, the court held that "[t]he most practical and realistic view is that, when Conservation approved and permitted occupancy of certain Forest Preserve lands by Public Works, jurisdiction thereof passed with the permission and such land ceased, during the period of such occupancy at least, to be lands of the Preserve" (Sup Ct, Essex County, Imrie, J., Decision, July 29, 1953, 6th unnumbered page [Resp Exh 42]).  At most, the court's "practical view" is consistent with the proposition that improvements that are part of a public easement are not part of the forest preserve.  To the extent that <u>Paul Smith's</u> is viewed as holding that a public highway's roadbed is not part of the forest preserve, it is inconsistent with the Appellate Division's holdings in <u>Bashaw</u> and should not be followed.

In any event, even assuming the roadbed of Old Mountain Road is not forest preserve land, this alone would not warrant dismissal of the Department's complaint.  Section 196.1 does not prohibit motor vehicle operation on town roads or public rights-of-way, among others, passing through the forest preserve (<u>see</u> 6 NYCRR 196.1[b]).  Accordingly, assuming Old Mountain Road's status as a public highway continues, because respondent remained upon the roadbed at all times during the incident, no violation of section 196.1 would have occurred irrespective of whether the roadbed is forest preserve or not.

-25-

On the other hand, if Old Mountain Road was abandoned or otherwise discontinued as a public highway, the State would have recovered full unencumbered title to the roadbed (see Bashaw v Clark, 267 AD2d at 684-685).  By operation of law, once the State acquired title to the roadbed, that roadbed became forest preserve land and any operation of a motor vehicle upon that roadbed would be operation on forest preserve land.  Thus, whether a violation of section 196.1 has occurred does not depend upon whether the roadbed under Old Mountain Road is forest preserve land.  Rather, a finding that a violation has occurred depends upon whether Old Mountain Road is still a public highway.

For similar reasons, I need not reach respondent's argument that the "free use of roads" provision of chapter 283 prevents the Department from regulating motor vehicle use on Old Mountain Road.  In addition to establishing the forest preserve, chapter 283 provided:

> "The forest commission [predecessor to the Department] may, from time to time, prescribe rules or regulations and may, from time to time, alter or amend the same, affecting the whole or any part of the forest preserve, and for its use, care and administration; but neither such rules or regulations, nor anything herein contained shall prevent or operate to prevent the free use of any road, stream or water as the same may have been heretofore used or as may be reasonably required in the prosecution of any lawful business"

(L 1885, ch 283, § 9 [emphasis added]).

Respondent argues that the "free use of roads" provision of chapter 283 must be read as a limitation upon the "forever wild" clause of the New York Constitution, thereby limiting the Department's ability to regulate the use of public highways in the forest preserve.  However, as just noted, pursuant to section 196.1, the Department does not regulate motor vehicle use on town roads and other public rights-of-way through the forest preserve.  Accordingly, the "free use" provision is not violated.  Conversely, if the public highway no longer exists, the "free use" provision is inapplicable.  Thus, whether the "free use of roads" provisions limits the "forever wild" clause of the Constitution and, thus, limits the Department authority to regulate roads in the forest preserve need not be decided in this case.

-26-

2.   Abandonment

The parties do not seriously dispute whether the Old
Mountain Road was established as a town road.  Pursuant to the
1810 Act, after the initial period during which the Northwest
Bay-Hopkinton Road was laid out and repaired, the repair and
maintenance of the road was to be assumed by the several towns
through which the road passed (see L 1810, ch CLXXVII, § III).
No evidence was presented indicating that jurisdiction over the
Old Mountain Road portion of the Northwest Bay-Hopkinton Road was
ever assumed by the State or Essex County.  Thus, at the time the
State acquired the lots underlying Old Mountain Road, the Road
was a town road under the jurisdiction of the Town of Keene and,
later, in part, the Town of North Elba (see Highway Law § 3[5];
Isaac v Town of Queensbury, 247 AD 263, 266 [3d Dept 1936]
[highways that are neither State nor county are town highways],
revd on other grounds 227 NY 37 [1938]).  As a result, the Towns
of North Elba and Keene had the broad power to regulate the use
of that portion of Old Mountain Road under their respective
jurisdiction (see NY Const, Art IX, § 2[c][6]; New York State
Pub. Empls. Fed., AFL-CIO v City of Albany, 72 NY2d 96, 100-101
[1988]).

Respondent McCulley argues on his motion to dismiss
that Department staff failed to present a prima facie case that
the portion of Old Mountain Road where the incident occurred is
not a town road under the jurisdiction of the Town of North Elba
or a road where a legal right-of-way exists for public use.
Viewing the record in the light most favorable to the Department,
and giving the Department every inference that may be fairly
drawn, I conclude that the Department has failed to make a prima
facie showing that the Old Mountain Road is not a town road or
public right-of-way.

Once a public highway exists, it is presumed to
continue until its existence is demonstrated (see City of Cohoes v
Delaware & Hudson Canel Co., 134 NY 397, 407 [1892]; Matter of
Van Aken v Town of Roxbury, 211 AD2d 863, 865 [3d Dept], lv
denied 85 NY2d 812 [1995]; Matter of Flacke v Strack, 98 AD2d
881, 882 [3d Dept 1983]).  The burden of establishing that a
highway is discontinued is on the party claiming that the highway
no longer exists (see Matter of Van Aken, 211 AD2d at 865; Matter
of Faigle v Macumber, 169 AD2d 914, 915 [3d Dept 1991]; Matter of
Flacke v Strack, id.).

A town road established by statute may be extinguished
in one of several ways.  Pursuant to Highway Law § 205, the town
superintendent of highways, with the written consent of a

-27-

majority of the town board, may file a certificate with the town clerk declaring that a town road has been abandoned (see Highway Law § 205[1]).  A road or public right of way is abandoned where the road or right of way is not traveled or used as a highway for a period of six years (id.).

Where a town road has not become wholly disused, such as for travel by pedestrians or on horseback, but is not used by more than two vehicles daily during a two-year period, a town may issue a certificate declaring a qualified abandonment of the highway (see Highway Law § 205[2]).  A qualified abandonment of a highway relieves the town of the obligation to repair or maintain the highway (see id.).

For public highways passing over or through the forest preserve, the Commissioner also has the authority pursuant to Highway Law § 212 to abandon or discontinue such highways to protect a relevant State interest (see Matter of Kelly v Jorling, 164 AD2d 181, 183 [3d Dept 1990], lv denied 77 NY2d 807 [1991]; Matter of Altona Citizens Comm., Inc. v Hennessy, 77 AD2d 956, 957 [3d Dept 1980], lv denied 52 NY2d 705 [1981]).

Department staff offered no evidence that the Old Mountain Road was the subject of a certificate of abandonment issued by either the Town of North Elba or the Town of Keene. Nor did the Department offer an order of the Commissioner pursuant to Highway Law § 212 closing the Road through the forest preserve.  At most, the Town of Keene has declared a qualified abandonment of that portion of the Road under its jurisdiction. However, the record is silent concerning whether the Town has complied with all statutory requirements for filing a certificate of qualified abandonment.  So, whether the Town of Keene's qualified abandonment of its portion of Old Mountain Road is effective is unclear on this record (see Highway Law § 205[2]; Hallenbeck v State of New York, 59 Misc 2d 475, 477 [Ct of Claims 1969], affd no opn 40 AD2d 1081 [3d Dept 1972] [absent strict compliance with procedure laid out under Highway Law § 205(2), qualified abandonment of a town highway is a legal nullity]; Stupnicki v Southern New York Fish and Game Assn., 41 Misc 2d 266, 268 [Sup Ct, Columbia County 1962], affd on opn below 19 AD2d 921 [3d Dept 1963], lv denied 13 NY2d 601 [1964]).

The circumstance that a certificate of discontinuance or abandonment has not been issued by a relevant authority, however, does not end the inquiry.  In the case of abandonment by non-use, a municipality's intention regarding a road is irrelevant (see Daetsch v Tabor, 149 AD2d 864, 865 [3d Dept 1989].  If the substantive facts establish abandonment, the road

ceases to be a public highway as a matter of law, not by the
filing of the certificate of abandonment (see Matter of Wills v
Town of Orleans, 236 AD2d 889, 890 [4th Dept 1997]; Matter of
Faigle, 169 AD2d at 916; Daetsch, 149 AD2d at 865).  The filing
of a certificate of abandonment by the town, in this
circumstance, is merely ministerial (see Daetsch, 149 AD2d at
865).  Similarly, a town's intention to abandon a road is also
not relevant when the substantive facts establish that the road
is not abandoned (see Matter of Van Aken, 211 AD2d at 865).  The
determination whether a public highway is abandoned by non-use is
a factual determination (see Coleman v Village of Head of Harbor,
163 AD2d 456, 458 [2d Dept]; lv denied 76 NY2d 768 [1990];
Daetsch, 149 AD2d at 865; Holland v Superintendent of Highways of
Town of Smithtown, 73 Misc 2d 851, 852 [1973]).

     Evidence of year-round travel by snowmobilers,
bicyclists, cross-country skiers and pedestrians over a clearly-
defined roadway is sufficient to preclude a finding of
abandonment by non-use (see Matter of Smigel v Town of
Rensselaerville, 283 AD2d 863, 865 [3d Dept 2001]; Hewitt v
Scipio, 32 AD2d 734 [4th Dept 1969], affd no opn 26 NY2d 934
[1970]; Brown v Town of Pitchairn, 4 Misc 3d 1029[A], at *1-*2
[Sup Ct, St. Lawrence County 2004] [Unreported Disposition, Text
in Westlaw] [disparate recreational use by snowmobilers,
bicyclists, cross country skiers and pedestrians]).  So long as
the public's travel along the highway is regular and by
reasonably normal means, non-vehicular and pedestrian traffic
prevents a finding of abandonment (see Kyser v New York Cent.
R.R. Co., 211 AD2d 500, 502 [4th Dept 1925]; People ex rel. New
York, Ontario and W. Ry. Co. v State Tax Commn., 190 AD 73, 75
[3d Dept 1919]; Mangam v President, etc., of Village of Sing
Sing, 164 NY 560 [1900], affg on opinion below at 26 AD 464 [2d
Dept 1898]).  Even seasonal use of a public highway for
recreational purposes will prevent abandonment, where that use is
continuous and consistent (see Smith v Town of Sandy Creek, 12
Misc 2d 916, 924-926, affd no opn 8 AD2d 688 [4th Dept], lv
denied 7 NY2d 707 [1959] [public travel every summer by
pedestrians over beaten path across shifting sands to reach the
shore of Lake Ontario]).  On the other hand, only occasional
limited use of a public highway will not defeat a finding that a
highway has been abandoned (see Abess v Rowland, 13 AD3d 790, 792
[3d Dept 2004] [only 15 attempts to walk or bike road was
occasional use]).

     In this case, the record reveals that Old Mountain Road
is a clearly-defined, unobstructed road passing through the
forest that has been regularly used by the public year-round (see
Curtis v Town of Galway, 50 AD3d 1370, 1371-1372 [3d Dept 2008]).

The Department's own witnesses provided uncontroverted testimony concerning "tremendous" amounts of public use of the Old Mountain Road, particularly during the winter months when it is used by cross-country skiers and ice climbers to access locations along the Road or to travel between North Elba and Keene.  The Road also sees occasional snowmobile use every winter.  Although the level of use drops off during the non-winter months, the Road nonetheless receives well more than occasional use by hikers, hunters, bicyclists, and horseback riders.  The Road has enjoyed this level of year-round use since at least the late 1960s or early 1970s.

Furthermore, the public has not acquiesced in attempts to barricade access to the Road.  Boulders that have been placed across the Road have been removed either by the Town of North Elba in reaction to complaints by individuals, or by private individuals themselves (see Matter of Smigel, 283 AD2d at 865). Thus, Department staff has failed to carry its burden of establishing a prima facie case of non-use of the Road for the requisite six-year period (see Matter of Aldous v Town of Lake Luzerne, 281 AD2d 807, 809 [3d Dept 2001]; Matter of Flacke v Strack, 98 AD2d at 882).

The intrusion of natural obstacles into the Old Mountain Road also does not support a prima facie showing of abandonment.  Lateral encroachment into the roadbed, such as by trees, does not result in an abandonment of the public highway (see Mangam, 26 AD at 464).  The beaver ponds do not present an obstacle to travel during the winter months.  In non-winter months, although travelers are compelled to detour around the second beaver pond, the detour to avoid the natural obstacle does not result in abandonment of the public easement (see Smith v Town of Sandy Creek, 12 Misc 2d at 924).  In any event, the inundation of the Road by beaver ponds results only in abandonment of portion of the Road so inundated, and not in the abandonment of the remainder of the Road (see id.).

Department staff argues that because the Road has seen only occasional motor vehicle traffic for more than six years, the motor vehicle use of the road has been abandoned even though other uses of the road (by pedestrians and on horseback) have not.  Implicit in staff's argument is the proposition that assuming only the motor vehicle use of a road is abandoned, the authority to regulate such motor vehicle use reverts to the underlying fee owner, and does not remain with the town, in the case of a town road.  Staff's novel theory of partial abandonment, however, lacks a basis in New York law.  Department staff is correct that the courts have not squarely addressed the

-30-

issue whether the public loses the right to travel by motor
vehicle over a public highway used solely for pedestrian travel.
However, staff's theory is inconsistent with the well-settled
principle that the lack of vehicle traffic does not result in any
abandonment of a highway or loss of the public easement (see
Mangam, 26 AD at 464; see also Smith v Town of Sandy Creek, 12
Misc 2d at 925-926; People ex rel. New York, Ontario and W. Ry.
Co., 190 AD at 75).

        Department staff appears to be arguing in favor of a
form of qualified abandonment by operation of law.  However,
nothing in New York law would appear to support such a theory.
Qualified abandonment appears to exist only in statute (see
Highway Law § 205[2] [added by L 1907, ch 246]; see also Highway
Law § 205-b).  Nothing in the case law suggests that Highway Law
§ 205(2) is the codification of common law principles.  To the
contrary, Highway Law § 205(2) was a legislative innovation
adopted at a time when lawmakers were concerned about the impact
the newly-invented motor vehicle was having on the macadamized
roads of the time, and the costs associated with keeping such
roads in repair (see, e.g., Report of the Joint Committee of the
Senate and Assembly of the State of New York, NY Leg Senate Docs
1980, vol 3, no 15, at 16).  Moreover, the courts have required
strict compliance with statutory requirements before recognizing
a qualified abandonment (see Hallenbeck, 59 Misc 2d at 477;
Stupnicki, 41 Misc 2d at 268 [procedures followed and
consequences of the qualified abandonment are radically different
from absolute abandonment]).  Unlike absolute abandonment, the
courts have not found a qualified abandonment as a matter of law
in the absence of strict compliance with statutory requirements.

        In addition, Department staff's theory of partial
abandonment begs the question of which legal entity would have
the authority to enforce a partial abandonment, the entity with
jurisdiction over the remaining public easement, or the
underlying fee owner.  In the case of the qualified abandonment
of town highways that provide access to State forest preserve
lands, Highway Law § 205-b may provide an answer (see Highway Law
§ 205-b[1][c]).  However, in the case of the non-statutory
partial abandonment advocated by staff, the answer is not clear.
If the authority to regulate the use of a public highway that has
been abandoned for motor vehicle use falls to the underlying fee
owner, the responsibility to prohibit motor vehicle use might
fall to an owner without police power, as in the case of a public
highway over privately-held land.  Assuming the courts would
accept staff's theory of partial abandonment, they might conclude
that the public entity with jurisdiction over the remaining
public easement, such as a town in the case of a town highway,

                            -31-

would retain the responsibility to prohibit and enforce motor
vehicle traffic on such a road (see NY Const, Art IX, §2[c][6]),
and not place that responsibility on the underlying fee owner.

     In any event, Department staff's theory of partial
abandonment does not provide a basis for finding a violation in
this case.  Even assuming Department staff's theory is viable,
and only motor vehicle uses of the Old Mountain Road have been
abandoned, a public right-of-way remains for pedestrian and
horseback traffic, even under staff's theory.  Because section
196.1 does not prohibit motor vehicle traffic when a public
right-of-way remains (see 6 NYCRR 196.1[b][5]), no violation is
stated.

     Department staff also points to the Town of North
Elba's failure to maintain Old Mountain Road from the turnaround
to the Town of North Elba/Town of Keene border as a basis for
finding an abandonment of the Road.  Proof that a municipality no
longer maintains a road may provide circumstantial evidence of
abandonment in the absence of proof concerning public use (see
Chamberlain v Town of Portville, 177 AD2d 996, 997-998 [4th Dept
1991], lv denied 80 NY2d 752 [1992]), or where the evidence
supports a finding that the public has acquiesced through non-use
(see Horey v Village of Haverstraw, 124 NY 273, 278 [1891]).
However, a town's failure to maintain a road alone does not mean
that the road ceases to be a highway (see Matter of Van Aken, 211
AD2d at 865).  Where other evidence of public use exists, as in
this case, a town's lack of maintenance does not prevent a
finding of no abandonment (see id.; Hewitt v Scipio, 32 AD2d 734
[4th Dept 1969], affd no opn 26 NY2d 934 [1970]; Matter of
Scheibel v O'Brien, 230 NY 277, 281 [1921]).

     Similarly, the Town's failure to include the Old
Mountain Road on its list of public highways is not proof of
abandonment (see Matter of Aldous, 281 AD2d at 809; see also
Pless v Town of Royalton, 81 NY2d 1047, 1049 [1993] [town not
estopped by certificate seeking State highway maintenance
funding]).  As testified to during the hearing, the Town only
lists those town highways that receive heavy maintenance.  The
fact that the Town does not provide heavy maintenance to the Road
is irrelevant to the issue whether the public continues to use
the Road (see Matter of Van Aken, 211 AD2d at 865).

     Department staff also relies on the depiction of Old
Mountain Road in area maps to argue the Road has been abandoned.
In particular, staff relies on a 2007 Highway Map of Essex County
that fails to include the portion of Old Mountain Road between
Mountain Lane and Alstead Hill Lane (see DEC Exh 66).  As

-32-

convincingly demonstrated at hearing, however, numerous roads in Essex County are not depicted on the 2007 map.  Accordingly, the failure of the 2007 Highway Map to include the Road is insufficient to establish that the Road is abandoned (see De Cuyper v Gonzales, 214 AD2d 765, 766-767 [3d Dept 1995] [town's failure to include road on town map insufficient to establish abandonment as a matter of law]).

The remaining maps, surveys, and other records proffered by the Department support the conclusion that Old Mountain Road continues to exist as a public highway (see Suffolk County Natl. Bank of Riverhead v State of New York, 60 AD2d 679, 680 [3d Dept 1977] [ancient records, maps and surveys are evidence that a public highway exists]).  The majority of records uniformly confirm the existence of Old Mountain Road, albeit as an unimproved road or trail.

In sum, Department staff contends that because Old Mountain Road has not been improved and maintained as a road suitable for motor vehicle use, it is abandoned as a public highway.  However, nothing in the law requires that a public highway be suitable for motor vehicle traffic to maintain its status as a public highway.  A road is a public highway whether it be traveled by foot, on horseback, or in a motorized or non-motorized vehicles (see Mullen v Fayette, 274 AD 527, 529-530 [3d Dept 1948], affd no opn 300 NY 501 [1949]).  Indeed, Old Mountain Road was established as a public highway long before motorized vehicles existed.  The Road did not lose its status as a public highway merely because motor vehicles have become a dominant means of travel on highways.  So long as Old Mountain Road sees regular use, even if only by pedestrians for recreational purposes, the Road is not abandoned as a public highway.

In this case, Department staff's proof is insufficient as a matter of law to overcome the presumption that the Old Mountain Road continues to exist as a public highway, whether as a town road or other legal public right-of-way.  As such, motor vehicle traffic over the Road is not prohibited under the plain terms of 6 NYCRR 196.1.  Accordingly, respondent's motion to dismiss the complaint should be granted.

Weight of Evidence Review

Even assuming Department staff's proof is sufficient to
establish a prima facie case of abandonment, I conclude that
staff failed to prove abandonment by a preponderance of the
evidence (see 6 NYCRR 622.11[c]).[138]  The weight of the credible
testimony, amply supported by the documentary evidence,
establishes that Old Mountain Road enjoys regular and significant
public use by cross-country skiers, ice-climbers, snowshoers,
hikers, horse-back riders, hunters, and bicyclists.  The Road
also sees occasional motor vehicle use by snowmobiles, ATVs, and
the occasional 4WD truck.  In addition, the Road is maintained as
a clear, well-defined path by the public, primarily by the
volunteer efforts of the ASTC.  All these uses together indicate
that the public has not abandoned the Road as a public highway,
even if only for recreational use.

Department staff contends that the intensity of some of
the uses of the Road was not clearly established by witness
testimony.  Department staff had the burden, however, of
establishing the intensity of use, or lack thereof, to overcome
the presumption of the Road's continuation.  To the extent
witnesses' use of terms such as "tremendous" are unclear, any
lack of clarity must weigh against the Department.

Moreover, even assuming some particular uses, such as
motor vehicle use, were only occasional, the totality of uses,
both motorized and otherwise, by the public reveals that Old
Mountain Road enjoys significant, regular and continuous use by
the public.  Accordingly, the Department has failed to prove the
public's abandonment of Old Mountain Road by a preponderance of
the evidence.

---

[138]  During oral argument on his trial motion to dismiss,
respondent argued that Department staff must prove abandonment by
the higher "clear and convincing evidence" standard of proof.  In
support of this argument, however, respondent relies upon private
easement cases, where the party seeking to establish abandonment
must demonstrate an intent to abandon "by clear and convincing
evidence" (see Consolidated Rail Corp. v MASP Equip. Corp., 67
NY2d 35, 39-40 [1986]).  Nothing in the case law in the public
easement context imposes this higher standard of proof to
establish abandonment of a public easement by non-use.  Moreover,
respondent cites no statute or regulation imposing the higher
standard of proof in the public easement context.  Accordingly,
Department staff must meet only the "preponderance of evidence"
standard imposed by 6 NYCRR 622.11(c).

CONCLUSIONS OF LAW

1.       When the Legislature established the Northwest Bay-
Hopkinton Road, of which Old Mountain Road is a part, it
established a public highway in the nature of a public easement
of passage.

2.       When the State acquired title to the various parcels
under Old Mountain Road, it acquired those fees in their
entirety, subject to the public highway already in existence.

3.       When the State acquired title to the various parcels
under Old Mountain Road, those parcels became a part of the
forest preserve, subject to the public highway already in
existence.

4.       Old Mountain Road, between the turnaround on Mountain
Lane in the Town of North Elba, to the western end of Alstead
Hill Lane in the Town of Keene, is a town road under the
jurisdiction of the respective Towns through which it passes.

5.       Old Mountain Road, between the turnaround on Mountain
Lane in the Town of North Elba, to the western end of Alstead
Hill Lane in the Town of Keene, is a legal public right-of-way.

6.       Old Mountain Road, between the turnaround on Mountain
Lane in the Town of North Elba, to the western end of Alstead
Hill Lane in the Town of Keene, has not been abandoned as a town
highway or legal public right-of-way.

7.       On May 22, 2005, respondent McCulley operated a motor
vehicle on a portion of Old Mountain Road in the forest preserve.

8.       Because respondent McCulley operated a motor vehicle in
the forest preserve on a town road or legal public right-of-way
as allowed under 6 NYCRR 196.1(b), respondent did not violate the
prohibition in 6 NYCRR 196.1(a) against the operation of a motor
vehicle in the forest preserve.

<u>RECOMMENDATION</u>

I recommend that the Commissioner grant respondent's motion to dismiss, and dismiss the Department's June 10, 2005 complaint.  I make this recommendation based upon the law and the facts as established at hearing.

Although I conclude that respondent McCulley is correct on the law, however, the equities in this matter do not favor him.  Respondent's purpose in challenging the Department's regulation prohibiting motorized vehicle use in the forest preserve is to open Old Mountain Road to snowmobiles.  The Road, however, is very popular for cross-country skiing and ice climbing in the winter.  Credible witness testimony indicates that use of the Road by snowmobilers would present a danger to the other users of the Road.

In addition, although respondent McCulley seeks to exercise his "right" to operate snowmobiles on Old Mountain Road,[139] neither respondent nor the Lake Placid Snowmobile Club have exercised any responsibility to maintain the Road.  Neither respondent nor the Club have sought or obtained a temporary revocable permit for maintenance of the Road (<u>see</u> <u>Flacke v Town of Fine</u>, 113 Misc 2d 56 [Sup Ct, St. Lawrence County 1982] [Departmental permits required for maintenance activities on rights-of-way through the forest preserve]).  Nor was any evidence presented indicating that respondent McCulley or the Club assisted in any voluntary maintenance efforts, particularly in the aftermath of the major floods in 1995 and 1996, and the ice storm in 1998.

In contrast, the Road has primarily been maintained for public use by the efforts of the Adirondack Ski Touring Council

---

[139]  In his fourth affirmative defense as pleaded in his answer, and as clarified in a letter dated September 21, 2007, respondent asserted the violation of various constitutional rights if the Department closed the Old Mountain Road pursuant to Executive Law § 816.  Specifically, respondent alleged procedural due process and equal protection violations, as well as a violation of his right to travel.  Respondent presented no evidence on these alleged violations, nor did respondent make any argument concerning such violations in his closing briefs.  Although as-applied constitutional challenges must be raised at the agency level (<u>see</u> <u>Matter of McCulley</u>, ALJ Ruling on Motion for Order Without Hearing, Sept. 7, 2007, at 5-7), respondent has apparently abandoned his constitutional claims.

("ASTC").  In the spirit of the original founders of the
Northwest Bay-Hopkinton Road, the ASTC, through volunteer labor
and capital, has taken the initiative to keep the Road open for
public use and enjoyment, and is largely responsible for the
Road's continuing popularity as a recreational destination.  That
effort would be threatened if the Road is subjected to
significant snowmobile use.

        Accordingly, I urge the Commissioner to consider
exercising the authority vested in the Department under Highway
Law § 212 (see Matter of Kelly v Jorling, 164 AD2d 181, 183 [3d
Dept 1990], lv denied 77 NY2d 807 [1991]; Matter of Altona
Citizens Comm., Inc. v Hennessy, 77 AD2d 956, 957 [3d Dept 1980],
lv denied 52 NY2d 705 [1981]; Matter of Town of Wells v New York
State Dept. of Transp., 90 Misc 2d 535, 537-538 [Sup Ct, Hamilton
County 1977]), to discontinue that portion of the Old Mountain
Road that passes through the forest preserve as a town road and
public right-of-way, and reopen the Road as a trail fully under
the Department's jurisdiction (see Vehicle and Traffic Law §
1630).  A discontinuance of Old Mountain Road as a town road
pursuant to section 212 would have only a prospective application
and, therefore, could not form a basis for finding respondent
liable under the 2005 complaint.  However, such a discontinuance
would preserve significant State interests, including the
"forever wild" provision of the New York State Constitution, and
protect the Old Mountain Road for those pedestrian and horseback
users that have given the Road its most significant use in modern
times.




                                    /s/
                        _____
                        James T. McClymonds
                        Chief Administrative Law Judge


Dated:    March 27, 2009
          Albany, New York








                              -37-